WEEKS, Appellant, vs. ROBERT A. JOHNSON COMPANY, Respondent.

*December 1—December 16, 1902.*

*Sale of chattels: Order: Subsequent correspondence: Contracts: Written and printed conditions: Acceptance: Lien of consignee: Waiver: Agency: Extras.*

1. Defendant ordered a machine through plaintiff's agent, the written order stipulating that the machine was guaranteed to give "entire satisfaction." Plaintiff wrote defendant asking for "confirmation of the order," stating that he did not like the term "entire satisfaction." Defendant in reply stated that, after being thoroughly tested, if the machine proved as represented he would keep it, and pay for it, and referred to the original written order as a "conditional order." *Held*, that the subsequent correspondence in no way changed the terms of the order.

2. A contract for the sale of a machine was on a printed form, and the written part of the order stated that entire satisfaction was guaranteed. On the margin there was printed "Goods shipped at buyer's risk" and "all claims for deficiencies must be made within fifteen days after receipt of goods." *Held*, that such printed matter did not destroy or change the terms and conditions written in the order.

3. Defendant purchased a machine from plaintiff on condition that it worked satisfactorily. In attempting to use it he spoiled considerable material, and, at plaintiff's request, had a duplicate part made for one portion. After having decided that it was not satisfactory, defendant offered to return the machine to the plaintiff on receipt of payment for the material damaged and his expenditures for the duplicate part. Sec. 3345, Stats. 1898, provides that "every consignee of property shall have a lien thereon for any money advanced by him to or for the use of the person in whose name the shipment of such property is made." *Held*, that the mere fact that defendant proposed to return the machine upon receipt of payment for his whole claim, including that for damaged material for which he had no lien, was not a waiver of the lien for his expenditures in supplying the duplicate part.

4. In such case the retention of the machine did not amount to an acceptance.

5. Defendant ordered a machine of plaintiff's agent, to be accepted if satisfactory, and, having difficulty with it, notified plaintiff, who answered that he had written the agent; that the agent

would go and see the machine, and expressed confidence that matters would be satisfactorily arranged. Plaintiff testified that he had "turned the matter over to" the agent. When defendant made claim for certain damaged material, plaintiff stated he would see the agent, that he had nothing to lose, and that he would look to the agent for the claim. *Held*, that a subsequent notice by defendant that the machine was unsatisfactory and would be returned, was properly sent to the agent.

6. Defendant ordered from plaintiff a "chocolate dipping machine," agreeing to purchase it if it did the work it was represented to do. Plaintiff suggested that, in order to run the machine to its guaranteed capacity, defendant should have four extra screens, which defendant ordered and plaintiff furnished. The screens constituted a part of the machine, and were of no use in any other machine or for any other purpose. *Held*, that there was no foundation for extra charge for the screens.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This is an action to recover $1,000, the purchase price of a chocolate dip machine, f. o. b. Philadelphia, and $45, the expenses of a man going to Milwaukee to set up the machine, and $40 for four special screens, reasonably worth and of the market value of $40, and interest on the total amount from April 10, 1900. The defendant answered by way of admissions, denials, and counter allegations, and set up a counterclaim to the effect that the plaintiff warranted and guarantied the machine to perform the work well for which it was intended, and be of great value and assistance to the defendant in the manufacture of confectionery, and that the machine in its work would be and prove to be entirely satisfactory to the defendant; that, relying upon such guaranty, the defendant agreed to test the machine in its business, and did thereafter thoroughly try and test the machine in the manner, way, and form as directed by the plaintiff, and in so doing destroyed and rendered worthless material of the value of $114.04; that such test proved the machine to be, and it was, utterly worthless and of no value, and demanded judgment for the

$114.04, besides the costs and disbursements of this action. The counterclaim was put in issue by a reply. At the close of the trial a verdict was directed in favor of the defendant. From the judgment entered thereon dismissing the action upon the merits, and for $35.52 costs, the plaintiff brings this appeal.

The written order for the machine is as follows:

<div style="margin-left:2em;">

Order Blank

"For Labor Saving Confectionery Machines.

By John Werner,

Rochester, N. Y., U. S. A.

Terms, net 30 days.    Goods shipped at buyer's risk.

Date, November 24, 1899.

Ship to *Robert A. Johnston Co.*, Milwaukee, Wis.

Number of Articles.    Description of Goods.    Price.

One chocolate dip machine, f. o. b. Philadelphia.    Capacity, 1,000 to 3,000 lbs. a day, and exclusive right to use it in Milwaukee for one year, *R. A. Johnston Co.* to pay R. R. fare for man to put up machine, *if machine accepted;* otherwise machine returned f. o. b. Milwaukee, Wis.    Entire satisfaction guaranteed.    $1,000.00

J. W. WERNER."

</div>

"All claims for deficiencies must be made within 15 days after receipt of goods."

To that order the plaintiff wrote the defendant under date of November 28, 1899:

"We are in receipt of an order to our Mr. Werner for a chocolate dipping machine, and before shipping same would like your confirmation. We don't like the term 'entire satisfaction.' It is very broad, although we have confidence that we can give you all we claim and more. We cannot afford to take big chances, as the machine weighs over a ton. We will refer you to" several persons therein named.

The defendant replied under date of December 1, 1899:

"We do not quite understand what you mean by wanting our confirmation of the order for machinery. We had a perfect understanding with Mr. Werner when he was here, and he seemed to be a very honest and honorable gentleman. When the machinery arrives and is thoroughly tested, *and if it proves as represented,* we will be pleased to keep it, and pay

for it, and I have no doubt that Mr. Werner was well satis-
fied that he was doing business with honorable people when
he did business with us.   We always try to buy the very best
thing there is on the market in machinery, and, if Mr. Wer-
ner did not make us believe that what you had was the best,
he probably would not have left with our conditional order.
We will forward to you to-day by mail the molds, as re-
quested, and will write you at the same time what particulars
may be necessary."

December 13, 1899, the defendant wrote the plaintiff:

"For the present we only wish to make the drop same as
sample sent you, but, as we wish to run this machine to its
capacity, you had better make us four extra screens.   If the
machine works as represented, we will want other designs,
but for the present, in order to get started, we prefer this one
mold only."

December 14, 1899, the defendant wrote the plaintiff:

"We have decided to have you make the four extra screens
ordered,—one each as per sample we are sending you under
separate cover."

January 13, 1900, the defendant informed the plaintiff
that the machine had arrived at Milwaukee.   The plaintiff
thereupon came to Milwaukee and set up the machine, and
then proceeded to test it, but failed to make it work satis-
factorily to the defendant or to his own satisfaction.   The
plaintiff then suggested that he would send for another box
to run the baskets through, and put a steam coil therein to
keep the sieves warm, and the defendant's man said, "All
right."   After the plaintiff left, the defendant received a
postal card from him postmarked January 18, 1900, at Chi-
cago, as follows:

"I think best to have you get the brace hot box made there,
and then you will have it as you wish; it will be quite a delay
should I ship from home.   Use the one you have for the per-
forated one or inside, and advise me how it worked as soon as
you have it in shape.   Wishing you abundant success,

"Yours,      W. H. WEEKS."

The defendant had the box made and put into the machine. It was a part of the machine,—similar to the one on when the machine came,—but the machine gave but very little, if any, better success.　January 23, 1900, the defendant wrote to the plaintiff:

"We discovered yesterday that all of the chocolate drops we have turned out on your machine taste after paint, and it is impossible for us to send out the goods; they are a dead loss on our hands. Upon investigating your machine thoroughly, we find that what you stated to us was enamel on the inside of the machine turns out to be paint.　The machine cannot be used in its present condition, and we cannot do anything with it until we hear from you. ˙Kindly let us hear from you promptly."

The plaintiff replied under date of January 27, 1900, and after some discussion, among other things said:

"Will you kindly let us know the amount of your loss, and send us samples of the drops, as we might be able to dispose of them in Chicago or in our city.　Mr. Werner, to whom we have written, tells us that he will be in your city soon, and is confident matters will be satisfactorily arranged.　You can remove enamel by first taking alcohol, then turpentine, and thoroughly cleansing with a strong solution of potash.　Trusting you will have no further trouble, we remain, very truly yours."

February 1, 1900, the defendant acknowledged receipt of that letter, and wrote to the plaintiff:

"We have on hand about 340 lbs. of chocolate that was used in your machine that we have set aside; also about 300 lbs. of chocolate drops as per sample we are sending you under separate cover.　If you will test one of these, you will readily detect the taste in question.　We hope that Mr. Werner will be able to visit Milwaukee very shortly, as we have decided to let the machine rest until he calls."

April 10, 1900, the defendant wrote to the plaintiff:

"The chocolate machine which we received from you on trial, as per agreement dated November 24th, we are obliged to reject.　We inclose bill covering various items of expense,

including chocolate and chocolate drops damaged by paint, of which we notified you some time ago. Upon receipt of your check for this amount ($114.04) we will be pleased to return your machine."

July 30, 1900, this action was commenced.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. H. Remington.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* and oral argument by *W. C. Quarles.*

Cassoday, C. J. By the terms of the order the defendant was to have the "exclusive right to use" the machine in Milwaukee "for one year" by paying the railroad "fare for man to put up machine, if machine accepted; otherwise machine returned f. o. b. Milwaukee, Wis. Entire satisfaction guaranteed." In response to that order the plaintiff stated that, before shipping the machine, he would like the defendant's "confirmation," and that he did not "like the term 'entire satisfaction' "; but there was no refusal to ship the machine upon the terms expressed in the order. This is made certain by the defendant's letter of December 1, 1899, in reply, in which it is stated that: "When the machinery arrives and is thoroughly tested, and if it proves as represented, we will be pleased to keep it, and pay for it;" and that if the plaintiff's agent, Werner, had not made the defendant believe that the plaintiff's machine was the best, he probably would not have obtained the defendant's "conditional order." The subsequent correspondence in no way changed the terms of the order. On the contrary, some of the letters and the conduct of the parties tended to confirm the order as written. That order was a printed blank filled up in writing. There was printed at the top and above the date: "Terms, net 30 days. Goods shipped at buyer's risk;" and on the side: "All claims for deficiencies must be made within 15 days after receipt of goods." Such printed matter cannot be allowed to

destroy or change the terms and conditions written in the order. 1 Greenl. Ev. (15th Ed.) § 278. See *State ex rel. Blodgett v. Eagan,* 115 Wis. 417, 91 N. W. 984, and cases there cited. It follows that the plaintiff shipped the machine upon the terms and conditions written in the order, to the effect that it was to be satisfactory to the defendant, and paid for if accepted by the defendant; otherwise returned f. o. b. Milwaukee. It never worked to the satisfaction of the defendant. The failure of the machine to fulfill the guaranty seems to have been recognized by the plaintiff when he tested the machine about the middle of January, 1900, and also in his letter of January 27, 1900.

2. But it is claimed that the defendant's remedy for such failure to fulfill the guaranty was to return the machine f. o. b. Milwaukee, as prescribed in the contract; and that the defendant's letter of April 10, 1900, rejecting the machine so received by the defendant on trial, and inclosing a "bill covering various items of expense, including chocolate and chocolate drops damaged by paint," of which the defendant had previously notified the plaintiff, amounting in all to $114.04, and stating that upon receipt of that amount the defendant would return the machine, was, in legal effect, an acceptance of the machine. It appears, and is undisputed, that $21.46 of the items included in that bill was expended by the defendant, at the plaintiff's request, in the purchase of material which was actually used in the manufacture of the rack or box mentioned, and which became a part of the machine. The statute declares:

"Every consignee of property shall have a lien thereon for any money advanced . . . by him to or for the use of the person in whose name the shipment of such property is made, and for any money . . . received by such person for his use, unless he shall before advancing any such money . . . or before it is so received for his use, have notice that such person is not the actual owner thereof." Sec. 3345, Stats. 1898.

Under this statute it is very obvious that the defendant, as such consignee, had a lien for the moneys so advanced, and was entitled to retain the possession of the machine until such moneys were repaid or tendered. The mere fact that the defendant's letter of April 10, 1900, was sent to the plaintiff's agent, John Werner, instead of the plaintiff, is without significance. The order was given to Werner. The plaintiff testified that he had "turned the matter over to Werner"; and also wrote the defendant, January 27, 1900, that he had written Werner, and that he would be in Milwaukee soon, and was "confident matters" would "be satisfactorily arranged"; and, after receiving a copy of the bill mentioned, the plaintiff stated to the defendant, in effect, that he would see Werner, who made the agreement with the defendant; that the plaintiff had nothing to lose, and would look to Werner for the claim. The mere fact that the defendant proposed to return the machine upon the receipt of a check for the whole bill was not a waiver of its lien for the particular bill mentioned. Thus, it is stated in a standard work:

"Where a holder of goods detains them for two claims, as to one of which he has a lien and as to the other not, the owner must tender the proper amount, unless the holder either expressly or by fair implication dispenses with the necessity of a tender. Thus, where one who has a particular lien on property claims in addition thereto a general lien thereon, to which he is not entitled, and refuses to surrender the property to the owner on that account, he does not by so doing waive the necessity of a tender of the amount secured by the particular lien." 19 Am. & Eng. Ency. of Law (2d Ed.) 33.

The plaintiff made no such tender.

3. The plaintiff contends that the four extra screens were of the value of $40, which more than counterbalanced the lien claim. The machine was guarantied to have a capacity of from one to three thousand pounds per day. The plaintiff suggested that the defendant ought to have more sieves,——

four extra screens,—or the defendant could not turn out the quantity of work guarantied. The defendant informed the plaintiff, December 13, 1899, that the defendant wished "to run this machine to its capacity," and that the plaintiff therefore had better make for the defendant four extra screens; and December 14, 1899, the defendant notified the plaintiff to make the four extra screens,—one each, as per sample sent. The four screens were necessary in order to ascertain, by a proper test, whether the machine had the capacity guarantied. They constituted a part of the machine, and were of no use to any other machine or for any other purpose. It follows that there is no foundation for the extra charge for the four screens.

4. As the machine was never accepted, the defendant was not liable "to pay R. R. fare for man to put up machine," as provided in the contract; and hence the plaintiff can take nothing by reason of that item alleged in the complaint. We find no error in the record.

*By the Court.*—The judgment of the circuit court is affirmed.