THE STATE EX REL. BERGH, Commissioner of Banking, vs. SPARLING and others, Civil Service Commissioners.

*May 11—June 21, 1906.*

*Civil service act: Unclassified service: Department of banking: Constitutionality of act.*

1. Pursuant to the power given by the amendment to secs. 4, 5, art. XI, Const., "to enact a general banking law for the creation of banks and for the regulation and supervision of the

State ex rel. Bergh v. Sparling, 129 Wis. 164.

banking business, provided that the vote of two thirds of all members elected to each house be in favor of the passage of such law," the legislature enacted a general banking law (ch. 234, Laws of 1903) and therein, as a part of the scheme for the control of the banking business, created a banking department, to be in charge of a commissioner of banking. *Held*, that the creation of such department required the affirmative vote of two thirds of all members elected to each house of the legislature, and that the officers and employees of such department are therefore within the unclassified civil service of the state, under the provision of sec. 8, ch. 363, Laws of 1905, that such unclassified service shall comprise "all officers and employees in any department for the creation of which a vote of two thirds of all members elected to each house is required."

2. In a proceeding by the commissioner of banking to prohibit the enforcement of the civil service law against officers and employees of the banking department, it being held that such officers and employees are not subject to said law, the question of the constitutionality of the law is not considered.

PROHIBITION to the civil service commissioners of the state. *Absolute writ issued.*

This is an original action in this court. It was brought by the relator, who holds the office of commissioner of banking, upon leave granted him by the court. It is alleged that the relator is the duly appointed and acting commissioner of banking under the authority of ch. 234, Laws of 1903, which, pursuant to the amendment of secs. 4 and 5, art. XI, of the constitution of the state, provides for the creation of banks and for the regulation and supervision of the banking business, and that his deputy, the examiners, and the clerks of the banking department are in the possession and performing the duties of the respective offices and positions created and imposed by the provisions of the act. It is further alleged that the defendants are the civil service commissioners of this state, that they are exercising the powers and duties imposed on them by ch. 363, Laws of 1905, and that they have made demand upon the relator and all other persons now holding offices and positions in the banking department, as incumbents of such offices and positions within the classified service of

this state under its provisions, to comply with all the terms and conditions of the civil service law, and that they threaten to subject the examiners and clerks of the department to the examination prescribed by it as a requisite to entitle them to continue in the employ of the state, and that, in case of relator's refusal, as an appointing officer under its terms, and the refusal of the employees of the state in this department, as employees within the jurisdiction of its provisions, to comply with the provisions of this law, the commission threatens to enforce as against the relator and such officers and employees of this department the penalties provided therein for failure to conform to them and to comply with the conditions imposed upon persons within the classified civil service of the state. It further alleges that this threatened enforcement of the civil service law as to this department would prevent the enforcement of the regulations and the supervision of the banking measures of this state as prescribed by law, and cause great and irreparable injury to the public and the state. Relator therefore demands that the civil service commission be prohibited from enforcing the provisions of the law as regards himself, as commissioner of banking, and all other persons in the employ of the state in the state banking department.

The defendants demurred to the relation and moved to quash it, upon the ground that it appears upon the face of the relation that the facts stated allege no grounds for the issuance of the writ of prohibition, that the facts stated show that defendants are vested with authority and power to carry out the provisions of ch. 363, Laws of 1905, and that the relator and all other officers and employees in the banking department of the state are subject to their jurisdiction, as persons holding offices and positions of trust or employment in the classified civil service of the state within the terms and provisions of this law.

*R. M. Bashford,* for the relator.

For the defendants there was a brief by the *Attorney Gen-*

*eral* and *A. C. Titus,* assistant attorney general, and a separate brief by *Olin & Butler,* of counsel; and the cause was argued orally by the *Attorney General* and *J. M. Olin.*

There was also a brief on behalf of the State Civil Service Reform Association by *Edward W. Frost,* attorney.

SIEBECKER, J.   Upon the demurrer to the relation and the motion to quash it, the contention is made that it appears from the facts alleged that no sufficient grounds are presented for the issuance of a writ to prohibit the defendants, as civil service commissioners, from proceeding to enforce the provisions of ch. 363, Laws of 1905, against relator and all the other officers and employees of the banking department, as within the classified civil service of the state under the terms and provisions of the act.   It is obvious that the legislature has undertaken to classify the civil service of the state and to provide for appointment to and promotion therein according to merit and fitness, to be ascertained, so far as practicable, by appropriate competitive examinations, and to that end created a civil service commission, charged with the duties and powers necessary to carry into effect the provisions of this act.   The jurisdiction of this commission extends to and covers the prescribed classified civil service.   Appointments in the unclassified civil service are not subject to the terms and conditions of the act. Relator avers that under sec. 8 of the act all officers and employees in the state banking department are within the unclassified civil service of the state.   This section provides: "The civil service shall be divided into the unclassified service and the classified service.   The unclassified service shall comprise," among others, "all officers and employees in any department for the creation of which a vote of two thirds of all members elected to each house is required."   It must then be determined whether relator and the other officers and employees serving in the banking department of the state, as created and established by ch. 234, Laws of 1903, are within

the unclassified civil service. This act is entitled: "An act for the creation of banks and for the regulation and supervision of the banking business." It is manifestly enacted pursuant to the calls of the amendment to secs. 4 and 5, art. XI, of the state constitution, ratified and adopted in 1902, which is as follows:

"Sec. 4. The legislature shall have power to enact a general banking law for the creation of banks, and for the regulation and supervision of the banking business, provided that the vote of two thirds of all members elected to each house, to be taken by yeas and nays, be in favor of the passage of such law."

The intent and scope of this provision are obvious from the language employed, which imports that the people thereby expressly delegated to the legislature the power to create banks and to provide for their regulation and supervision. The occasion for such specific delegation of power by the people to the legislature is manifest from the history of these constitutional provisions. Originally the people reserved to themselves the control of the creation of banks under the provisions of secs. 4 and 5, art. XI, of the constitution, which declared that: "The legislature shall not have power to create, authorize, or incorporate, . . . any bank, or banking power or privilege, or any institution or corporation having any banking power or privilege whatever," except with the consent of the people expressed by ballot, and then any law granting such power should be inoperative until approved by a vote of the electors at a general election. These provisions were abrogated by the adoption by the people of the above amendment at the general election in 1902, whereby unrestricted power over the subject of banking was given to the legislature, both in respect to the creation of banks and the regulation and supervision of the banking business.

The first legislative action, exercising the right to frame laws under the power thus conferred, is embodied in ch. 234,

Laws of 1903, which provides for the creation and maintenance of banks and the supervision of the banking business. It seems that the legislature intended to cover these subjects in detail and to provide a legislative scheme for the exercise of the powers conferred by the constitutional amendment. As a part of the general plan and scheme to accomplish this purpose, subch. 1 of this act establishes "a banking department, which shall have charge of the execution of the laws relating to banks and the banking business," and which is to be "under the management and control of a chief officer who shall be called the commissioner of banking," who is given power to appoint a deputy, examiners, and clerks to assist in the administration of the affairs of the department. In other parts of the act power is expressly conferred on the commissioner to examine annually "the cash, bills, collaterals, securities, books of account, condition and affairs of each bank, and mutual savings bank doing business in this state, except national banks." For this purpose he may administer oaths to persons to be examined by him, and determine whether banks do their business at the places fixed by their charters and according to prescribed regulation. He is given power to demand of any bank that it make good any impairment or deficiency in its capital stock, and, in case of noncompliance with his demand, he is to make report thereof to the attorney general of the state to secure the appointment of a receiver and the winding up of the bank's affairs. He is also authorized to take possession of a bank's books, records, and assets whenever it unlawfully refuses to pay its depositors in accordance with the terms on which their deposits were made, or if the bank is insolvent, and to hold them until they can properly be turned over to a receiver. In all cases where banks fail to keep books and accounts in such a manner as to enable him to readily examine and ascertain their condition, he is empowered to prescribe the keeping of such books and accounts as shall be necessary to record the transactions of the banks, and, whenever

the banking business of different banks is conducted in such
close proximity as to interfere with their proper examination
or supervision, he may require any of such banks to remove its
banking offices to some other location. It is made his duty to
make a full report each year to the governor; such report ex-
hibiting the condition of the various banks as to amount of
capital returned by them, their liabilities and total resources,
and giving other information, as required, pertaining to the
banking business of the state.

It is evident from these and kindred provisions of this act
that the creation of the banking department and the estab-
lishment of the office of commissioner of banking was designed
and intended as part of a general banking law for the creation
of banks and for the regulation and supervision of the bank-
ing business. The powers so conferred afford the strongest evi-
dence that the establishment of the department with the com-
missioner in its charge is a part of the general scheme and
purpose of the legislature to accomplish the purposes and to
exercise the power conferred by the constitutional provision.
It is not suggested that the scheme thus adopted is not an ap-
propriate method for attaining effective regulation and super-
vision of the banking business. It seems that a proper admin-
istration of these powers requires an instrumentality like this
department to carry out efficiently the legislative action on
this subject, and that this makes it an integral and necessary
part of the legislative scheme for the control of the banking
business. Upon these considerations the conclusion seems in-
evitable that the creation of this department, with the office
of commissioner of banking, by ch. 234, Laws of 1903, re-
quired the affirmative vote of two thirds of all members elected
to each house of the legislature in favor of the passage of the
law, and that the department officers and employees are em-
braced in the unclassified civil service of the state, as pre-
scribed by ch. 363, Laws of 1905, and hence are not subject
to the power, duties, and authority vested in the civil service

commission.. Defendants therefore cannot subject them to their jurisdiction and must be prohibited from enforcing the provisions of the act, as threatened, against them.

The questions suggested upon the argument and fully presented in the respective briefs of counsel, as to whether or not the provisions of the civil service act are violative of any constitutional provisions, require no discussion here, since relator is not subject to the provisions of the act and can in no sense be affected or injured by the enforcement of its provisions.

*By the Court.*—Judgment is ordered that an absolute writ of prohibition issue forthwith, commanding the defendants, as members of the state civil service commission, to absolutely refrain from proceeding to enforce any of the powers vested in them by ch. 363, Laws of 1905, or any of the penalties prescribed by this act, against relator or any other officer or employee in the banking department of the state,—without costs; the relator to pay the fees of the clerk of this court.