In re Voluntary Assignment of Adams Machinery, Inc.: Worthington Corporation, Respondent, v. Moskowitz, Receiver, Appellant.

*September 4—October 1, 1963.*

611

612

For the appellant there were briefs and oral argument by *John J. Ottusch* of Milwaukee.

For the respondent there was a brief by *Heft, Coates, Boggs & Heft* of Racine, and oral argument by *Glenn R. Coates.*

CURRIE, J. This appeal presents the following three issues:

(1) Does sec. 241.26, Stats., require filing of a consignment agreement when consignment and delivery are initially for the purpose of fulfilling rental agreements between the consignee and third-party lessees, but ultimately for the

purpose of increasing the probability of sale (upon approval by the consignor) to the lessees?

(2) Does a ch. 128 receiver obtain title to property consigned to the assignor, by reason of consignor's failure to record the consignment agreement pursuant to sec. 241.26, Stats.?

(3) Is ch. 128, Stats., unconstitutional insofar as it (in conjunction with sec. 241.26, Stats.) gives the receiver title to property which would be in a third-party consignor but for the latter's failure to file and record the consignment agreement pursuant to which the property was consigned to the assignor?

### *Applicability of Sec. 241.26, Stats.*

Subs. (1) and (2) of sec. 241.26, Stats., provide:

"(1) Whenever goods, wares or merchandise are consigned and delivered to any person for the purpose of sale or merchandising, and the title thereto remains conditionally or unconditionally in the consignor the consignment agreement shall be in writing and filed in accordance with the provisions of sections 122.06, 122.11 and 122.14.

"(2) If a consignment agreement is not so made and filed, the title to any such goods, wares or merchandise shall be deemed to be in the consignee as to purchasers thereof *and creditors of such consignee.*" (Italics supplied.)

Secs. 122.06, 122.11, and 122.14, Stats., referred to above in sub. (1) of sec. 241.26 contain the filing provisions of Wisconsin's Uniform Conditional Sales Act. It is undisputed that Worthington made no attempt to comply with sub. (1) of sec. 241.26 by filing anything in the office of any Wisconsin register of deeds.

The problem before us is primarily one of statutory interpretation. The key words of sub. (1) of sec. 241.26, insofar as material to the issues presented on this appeal, are *"consigned"* and *"merchandising."*

The legislative history of sec. 241.26, Stats., does not reflect any clear legislative intent as to what types of consignments were to be covered.[1] Thus it is permissible, and, under sec. 990.01 (1), mandatory, to construe sec. 241.26 (1), and in particular the words, "consigned" and "merchandising," according to their common and approved usage. With respect to the former it should be noted that the word "consigned" should be distinguished from the phrase "consignment for sale." While most consignments are ordinarily for the purpose of sale, the relationship does not require authority to sell. The United States supreme court in *Sturm v. Boker* (1893), 150 U. S. 312, 326, 14 Sup. Ct. 99, 37 L. Ed. 1093, held that the word "consigned" used in its commercial sense means that the property is committed or intrusted to the consignee for "care or sale." The Connecticut court in *Harris v. Coe* (1898), 71 Conn. 157, 163, 41 Atl. 552, declared that the term "consignment" imports an agency, and that title is in the consignor. A more-recent case holding that "consignment" does not imply a sale but imports an agency is *Terminal Warehouse & Refrigeration Co. v. Cross Transportation Co.* (M. Ct. App. D. C. 1943), 33 Atl. (2d) 617, 619. It necessarily follows that goods may be "consigned" to another under any kind of an agency relationship whether it be for sale, warehousing, or for leasing to others as was the case here.

We now turn to the proper interpretation of the statutory word "merchandising." Here we are met by Worthington's contention that the trial court's finding, that the compressors were not shipped by it for the purpose of sale or merchandis-

[1] The legislative reference library's file on sec. 241.26, Stats. (ch. 374, Laws of 1935) merely contains a note that the purpose of the statute is to "Make filing provision same as conditional sales contracts or chattel mortgages. This bill is for purpose of preventing fraudulent claim of consignment as against creditors in bankruptcy proceedings."

ing, cannot be upset by this court because not against the great weight and clear preponderance of the evidence. The pertinent issue, however, is not whether this finding is unsupported by sufficient evidence. None of the material evidence bearing on the purpose of shipment is in dispute. Therefore, whether under such undisputed facts the purpose of the shipment was "merchandising" within the meaning of sub. (1) of sec. 241.26, Stats., presents a question of law rather than a question of fact and renders inapplicable the great-weight-and-clear-preponderance-of-the-evidence rule. We consider apposite the pronouncement of this court in *Dairy Queen of Wisconsin, Inc., v. McDowell* (1952), 260 Wis. 471, 474, 51 N. W. (2d) 34, 52 N. W. (2d) 791:

> "Most of the facts were stipulated, there being few, if any, in dispute, and those not in sharp conflict. Here we have the trial court applying the law to the facts or the facts to the law, as it sees it. In such cases this court is not bound by the findings of the trial court, and the rule that the findings must be sustained unless against the great weight and clear preponderance of the evidence is not applicable. *Will of Mechler* (1944), 246 Wis. 45, 16 N. W. (2d) 373."

Sub. (1) of sec. 241.26, Stats., employs the phrase "sale or merchandising." In interpreting the meaning to be attributed to "merchandising" we begin with the premise that it is not merely synonymous with the word "sale." This is because a statute should be construed so as to avoid rendering part of it superfluous by giving a particular word the same meaning as the word preceding. 50 Am. Jur., Statutes, p. 365, sec. 359. *Platt v. Union P. R. Co.* (1878), 99 U. S. 48, 59, 25 L. Ed. 424. Webster's New International Dictionary (3d ed., unabridged) defines the verb "merchandise" as follows:

> "1: to buy and sell: deal in: make merchandise of 2: to carry on sales promotion of: advertise, publicize, or present attractively or effectively."

Under the undisputed facts before us there was an element of sales promotion on the part of Worthington in consigning the four compressors to Adams to be leased by the latter to ski resorts. The "Consignment Addendum" of November 4, 1961, to the distributor agreement of March 4, 1960, obviously was drafted by Worthington because the first page thereof is typed on Worthington's printed letterhead. Worthington drafted this addendum after the leases with the three ski resorts had been negotiated by Adams, for the purpose of enabling those leasing arrangements to be carried out. Therefore, the sentence of the addendum that Worthington appoints Adams "as its consignee to lease or sell Worthington 900′ Portable Compressors, on commission" is particularly significant. Furthermore, prior to the signing of the addendum Worthington delivered to Adams a two-paged typed memorandum entitled "900′ Consignment Plan" whereby it outlined the terms under which it would agree to consign its 900′ Portable Compressors, on commission" is particularly Adams. This memorandum contained the following significant introductory paragraph:

*"Objective*
"The objective of the plan is to obtain maximum 900′ sales by providing 900′ compressors to distributors for rental without purchase obligation."

The trial court in its memorandum decision quoted the above-quoted objective of the instant consignment plan, and then went on to state:

"The title to the units did not pass to Adams merely because there was a hope upon the part of both Adams and Worthington that a lessee user of a compressor might buy the compressor ultimately. Until that stage was reached by agreement, including fixing the price therefor in advance, the relationship was only a rental one and not a sale or merchan-

dising. *Locke v. Bort,* 10 Wis. (2d) 585. Had the transaction included a price for the unit and that the rentals or portions thereof would be applied thereon in the event that a user would exercise an option to buy it, then the situation would be different."

It is apparent from the above-quoted extract of the memorandum decision that the trial court has placed an erroneous interpretation on the statutory word "merchandising," and has construed sub. (1) of sec. 241.26 as being equivalent with the preceding word "sale." This ignores the element of sales promotion which also is part of the commonly accepted meaning of "merchandising."

Worthington advances the further argument that sec. 241.26, Stats., was only intended to cover situations where the consignee has the consigned goods in his actual possession and where creditors might thereby be misled into thinking the consignee is the owner. In this respect Worthington points out that it was only contemplated that Adams would have the compressors in its possession temporarily in order to add battery acid and antifreeze and then they would pass to the possession of the lessees. We believe that there are two effective answers to this argument. First, there is nothing in the statute itself to suggest such a restrictive interpretation. Secondly, the fact that it is contemplated that the consignee will lease the consigned property to others nevertheless creates a situation where creditors might be misled into believing that the leased property constitutes part of the consignee's assets. For example, a dealer in construction equipment such as Adams might both sell and lease equipment. In seeking credit the leased machinery, as well as the machines actually in Adams' possession, would be assets which any prospective creditor would be likely to take into consideration in extending credit.

Worthington further points to the fact that all four compressors bore plates which stated that Worthington was the owner, and, therefore, that, if any prospective creditor had inspected the compressors, he would have ascertained that the lessor Adams was not the owner. We view this situation to be no different from the standpoint of the applicability of sec. 241.26, Stats., than if the compressors had been consigned to Adams to keep in his possession and sell, and each compressor had attached plates stating that Worthington was the owner. In the latter situation, if there was no filing in compliance with sub. (1) of sec. 241.26, the presence of these attached plates would be unavailing against an attaching creditor or trustee in bankruptcy. The legislature has not seen fit to recognize the attachment of ownership plates as the equivalent of the filing required by the statute.

In conclusion we determine that an objective of the instant consignment was sales promotion and, therefore, the compressors were consigned for "merchandising" within the meaning of sub. (1) of sec. 241.26, Stats.

### Receiver's Right to the Consigned Property.

Sub. (2) of sec. 241.26, Stats., provides that, in the event of failure to comply with the filing requirements of sub. (1), title to the consigned goods shall be deemed to be in the consignee as to "creditors" of the consignee as well as purchasers of the goods. Worthington contends that the statutory word "creditors" is confined to creditors who have secured a lien on the goods by attachment or levy of execution, and that, while the receiver represents creditors generally, he does not stand in the shoes of a creditor armed with process, there having been no such type of creditor at the time Adams made its assignment for benefit of creditors. If Worthington is correct in these contentions then it would follow that the order appealed from should be affirmed.

This court has held in considering the provisions of sec. 241.11, Stats.,[2] dealing with the renewal of the filing of chattel mortgages, that the word "creditors" in such statute is limited to creditors who after the filing has ceased to be good have acquired liens upon the property. *Graham v. Perry* (1929), 200 Wis. 211, 215, 228 N. W. 135, 68 A. L. R. 267; *Ullman v. Duncan* (1890), 78 Wis. 213, 217, 47 N. W. 266; and *Lowe v. Wing* (1882), 56 Wis. 31, 33, 13 N. W. 892. This holding is in accord with decisions from other jurisdictions. Anno. 51 A. L. R. 591, 598. The same interpretation has also been placed upon the word "creditors" by most courts in construing conditional sales filing statutes. 2 Williston, Sales (rev. ed.), p. 277, sec. 327a. However, New York has held that a simple contract creditor is as much within the chattel mortgage and conditional sales contract filing statutes of that state as an attaching or levying creditor. *Karst v. Gane* (1893), 136 N. Y. 316, 32 N. E. 1073, and *Baker v. Hull* (1929), 250 N. Y. 484, 166 N. E. 175. For the purpose of the instant appeal we will assume, without deciding, that the word "creditors" appearing in sub. (2) of sec. 241.26, bears the restrictive meaning contended for by Worthington.

We next turn to the title of the receiver. Sec. 128.19 (1) (b), Stats., provides:

"(1) The receiver or assignee upon his qualification shall be vested by operation of law with the title of the debtor as of

---

[2] This statute provides that, "Every such mortgage shall cease to be valid, as against the creditors of the person making the same or subsequent purchasers or mortgagees in good faith, after the expiration of 3 years from the filing of the same or a copy thereof. The validity of the filing may in each case be extended for successive additional periods of one year from the date of filing the affidavit, by filing with the register of deeds within 30 days next preceding the expiration of each period, an affidavit" in the form prescribed in such statute.

the date of the filing of the petition or assignment hereunder, except so far as it is property which is exempt, including

"(a) . . .

"(b) Property which prior to the filing of the petition or assignment he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

At first blush it would appear that the instant compressors, because of the failure to comply with the required filing requirements of sec. 241.26, Stats., are "property which prior to the . . . assignment . . . might have been levied upon and sold under judicial process" against Adams. So construed it would be the equivalent of stating that the receiver would have title to the compressors as against Adams. However, Worthington points out that the above-quoted language of sec. 128.19 (1) (b) is identical to that of sec. 70a (5) of the Bankruptcy Act of 1898. When ch. 128, Stats., was re-created by ch. 431, Laws of 1937, not only was sub. (1) (b) of sec. 128.19 copied from the 1898 Bankruptcy Act, but several of the other provisions of the new ch. 128 contained identical, or substantially the same, wording as provisions in the federal act.[3] It is a settled rule in the construction of statutes that, where a statute has received a judicial construction in another state and is then adopted by Wisconsin, it is taken with the construction which has been so given it. *Estate of Sweet* (1955), 270 Wis. 256, 258, 70 N. W. (2d) 645; *Estate of Bullen* (1910), 143 Wis. 512, 520, 128 N. W. 109; and *Draper v. Emerson* (1867), 22 Wis. 142 (*147), 144 (*150). The same rule is applicable where Wisconsin adopts the language of a federal statute which has been construed by the United States supreme court.

[3] For example, compare secs. 128.18 (2), (3), (4), (5), (6), and 128.19 (2), Stats., with comparable provisions found respectively in secs. 67 (b), (c), (d), (e), (f), and 70 (e) of the Bankruptcy Act of 1898 (30 U. S. Stat. at L., p. 544).

Under the federal decisions of *Hewit v. Berlin Machine Works* (1904), 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, *Thompson v. Fairbanks* (1905), 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, and *York Mfg. Co. v. Cassell* (1906), 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, the statutory language of sec. 70a (5) of the Bankruptcy Act of 1898 would have been insufficient to vest title to the compressors in the receiver as against Worthington. These cases make it clear that where, by failure to comply with a filing statute, the title acquired by the bankrupt was not void against everybody, but only against a limited class, such as creditors who had obtained a lien, the trustee acquired no greater title than the bankrupt. However, if the failure to file rendered an incumbrance given by the bankrupt void as against all persons, then the statutory language of sec. 70a (5) of the Bankruptcy Act of 1898 was applicable and the trustee, not the incumbrancer, would be entitled to the property or its proceeds. The statutory language of sec. 70a (5) of the Bankruptcy Act of 1898, which corresponds to that of sec. 128.19 (1) (b), Stats., was held to be only intended to refer to conveyances of property tainted with fraud. On this point see also *In re Garcewich* (2d Cir. 1902), 115 Fed. 87. A transfer which is only void as to a limited class is not deemed to be a fraudulent transfer to which this statutory language is applicable.

In 1910, the Congress, by ch. 412, sec. 8, 36 U. S. Stat. at L., p. 840, amended the Bankruptcy Act of 1898 so as to provide:

". . . and such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights,

remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." [4]

This changed the rule of the afore-cited federal cases so that after 1910 the title of the trustee in bankruptcy was superior to that of any mortgagee or conditional sales vendor of the bankrupt in a situation where a state filing statute had not been complied with, and under state law the failure to file could only be taken advantage of by creditors armed with process, or who had attached or levied upon the property. While we do not find a similarly worded provision to this 1910 amendment in ch. 128, Wis. Stats., we do have sub. (1) of sec. 128.18, Stats., which reads:

"Claims which for want of record or for other reasons would not have been valid liens as against creditors of the debtor armed with process, pursuant to which such property has been attached or levied upon, shall not be liens against the estate."

We are satisfied that the above provision when read in connection with that of sub. (1) (b) of sec. 128.19, Stats., which provides that the receiver is vested with title to any property which at the time of the filing of the assignment might have been levied upon by judicial process, has the effect of putting the receiver in the position of a creditor who has obtained a lien by judicial process. We reach this conclusion in spite of the fact that sub. (1) of sec. 128.18 uses the phrase "shall not be liens against the estate." Technically a conditional sales vendor, or a consignor under a consignment for sale or merchandising, has title to the property and not merely a lien. However, we cannot conceive that the legislature intended to draw a line of demarcation between chattel mortgages on the one hand and conditional sales or consignments for sale or merchandising on the other, by the

---

[4] This same provision in slightly different verbiage is now found in sec. 110 (c) of the Bankruptcy Act. See 11 USCA, p. 11.

provisions of sub. (1) of sec. 128.18 and sub. (1) (b) of sec. 128.19.

. Therefore, even if sec. 241.26, Stats., is to be construed as making the instant consignment only void as against creditors who have obtained a lien upon the property by judicial process because of the failure to file, these provisions of ch. 128, Stats., had the effect of placing the receiver in that position. It necessarily follows that the receiver is entitled to recover possession of the four compressors or their value.

### Constitutional Issue.

Worthington contends that, if this court should so construe the provisions of ch. 128, Stats., so as to clothe the receiver with the same title as a creditor armed with process, then such provisions of ch. 128 would violate clause 4 of sec. 8, art. I of the United States constitution, by which the Congress is given the power to establish uniform bankruptcy laws. This power is unrestricted and paramount and necessarily excludes state regulation in the nature of bankruptcy legislation.

Worthington places great reliance upon *In re Wisconsin Builders Supply Co.* (7th Cir. 1956), 239 Fed. (2d) 649. That case held unconstitutional the involuntary provisions of ch. 128, Stats., but went on to hold that the voluntary provisions were constitutional, citing *Pobreslo v. Joseph M. Boyd Co.* (1933), 287 U. S. 518, 53 Sup. Ct. 262, 77 L. Ed. 469. Based on this decision invalidating the involuntary provisions of ch. 128, Worthington argues that if ch. 128 is held to "enlarge" the title of the receiver beyond that of the assignor Adams, the effect is to involuntarily diminish the rights of creditors.

We do not find this argument persuasive. The net effect of our construction of sub. (1) of sec. 128.18, Stats., and sub. (1) (b) of sec. 128.19 is to hold that the failure to comply with the filing requirements of sec. 241.26 is to render

the consignment void against the receiver. The result is no different than if sub. (2) of sec. 241.26 had specifically added "receivers under assignments made by the consignee for benefit of creditors" to the named classes of persons as to whom title shall be deemed to be in the consignee in case of failure to properly file the consignment agreement. The question as to whether failure to comply with state filing statutes renders a particular transfer or reservation of title void is a matter of state and not federal law. *Skilton v. Codington* (1906), 185 N. Y. 80, 77 N. E. 790; *In re Shipley* (D. C. Md. 1928), 24 Fed. (2d) 991. A reading of the previously cited United States supreme court cases of *Hewit v. Berlin Machine Works, supra,* and *York Mfg. Co. v. Cassell, supra,* discloses that the court resorted to state law to determine the legal effect of failure to comply with state filing statutes.

In view of the foregoing we find no merit in Worthington's contention that the provisions of sub. (1) of sec. 128.18, Stats., and sub. (1) (b) of sec. 128.19 are unconstitutional as herein construed.

*By the Court.*—Order reversed, and cause remanded for further proceedings not inconsistent with this opinion.