Lewis E. SOLOMON, Trustee of the Estate of Northwood Millwork, Inc., a Corporation, Bankrupt, Appellant,

v.

NORTHWESTERN STATE BANK, Appellee.

No. 17297.

United States Court of Appeals Eighth Circuit.

Feb. 24, 1964.

M. L. Culhane, James E. Culhane, Minneapolis, Minn., for appellant.

Joe A. Walters, Thomas A. Keller, III, Minneapolis, Minn., and O'Connor, Green, Thomas & Walters, Minneapolis,

Minn., Clinton W. Redlund, St. Paul, Minn., of counsel, for appellee.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and HANSON, District Judge.

HANSON, District Judge.

This is an appeal from a bankruptcy review. The Northwestern State Bank filed a Petition for Reclamation in the Bankruptcy Court. This petition in part alleged: (1) That on March 24, 1961, the reclaimant, Northwestern State Bank, entered into a Factor's Lien Agreement with the bankrupt, Northwood Millwork, Inc., and that it had been filed in the office of the Register of Deeds of Ramsey County, Minnesota, on March 30, 1961; (2) That the reclaimant loaned to the bankrupt on December 14, 1961, $45,000.00 to be secured by the factor's lien which was subsequently reduced to $20,841.05; and (3) That the December 14, 1961, loan was also secured by certain specified accounts receivable.

The trustee answered and admitted that a purported agreement was filed on March 30, 1961, but denied that the factor's lien was valid upon the trustee. The trustee also denied that there was any valid lien as security or otherwise on the bankrupt's accounts receivable.

A hearing was held before the Referee in Bankruptcy on this matter. There was no question but that the Factor's Lien Agreement was executed and recorded as alleged, that the loan was made in the amount of $45,000.00 and that it had since been reduced to $20,841.05, and that the agreement purported to give the Bank a lien on the bankrupt's inventory and accounts receivable.

The trustee claimed that the Factor's Lien Agreement was invalid as to the trustee for the reason that it failed to describe the property and failed to give the location of the property which was to be subject to the lien. The applicable Minnesota statutes read as follows:

"514.81 Continuing lien

"If so provided by any written agreement with the borrower, a fac-

tor shall have a continuing lien upon all merchandise of the borrower generally described in such agreement, or any separate written statements thereafter signed by the borrower and delivered to the factor * * * and upon any accounts receivable or other proceeds resulting from the sale or other disposition of such merchandise, and * * * such lien shall secure the factor for all his loans and advances to, or for the account of, the borrower made within the time specified in a notice filed * *."

"514.82 Execution of lien; contents; amendment of notice

"Notice of the creation of a factor's lien shall be signed by the factor and the borrower, shall be filed as hereinafter provided, and shall contain the following information: * * *

"(c) The general character of merchandise subject to the lien, or which may become subject thereto, together with the place or places where such merchandise is or will be situated."

"514.83 Notice, filing of

"* * * no factor's lien created pursuant to sections 514.80 to 514.91 shall be valid or enforceable against creditors of the borrower until the notice provided for in section 514.82 has been so filed. * * *"

"514.91 Construction

"* * * A substantial compliance with their several provisions shall be sufficient for the validity of a lien * * *."

The Bank states in its brief that it is admitted that no description of the merchandise was given in the Notice which was filed. The Bank asserted that there was constructive notice of the location of the merchandise and that the factor's lien is valid because there was substantial compliance with the several provisions of the Factor's Lien Act.

The Referee found for the trustee and against the reclaimant Bank. Although other issues were presented to the Referee and the District Court, it is the dis-

position of this one issue which will be determinative of this appeal.

There is a discussion of factor's liens in Collier on Bankruptcy, 14th Ed. Section 70.77. The statutory factor's lien authorizes floating liens on inventory in favor of banks and various other types of lenders. The common-law factor's lien was usually a possessory type lien while the statutory lien is not. Collier states that the factor's lien is the most notable legislative development in the attempt to obtain by legislation the freeing of commercial lenders of the rule in Benedict v. Ratner, 268 U.S. 353, 45 S. Ct. 566, 69 L.Ed. 991. See also Knapp v. Milwaukee Trust Co., 216 U.S. 545, 30 S. Ct. 412, 54 L.Ed. 610. That rule as it was applied in Minnesota made any transfer of property as security which reserves to the transferor the right to dispose of the property void or voidable as against certain creditors. There appears to be at least three purposes behind this rule. One reason was that it left ostensible ownership in the transferor. The theory of a conceptional repugnancy between the actualities of the transaction and the purported security interest is another reason. A third reason is found in In Re Summit Hardware, Inc., 302 F.2d 397 (6th Cir.). In that case, the court said the records would serve to identify the property subject to the lien in the event of enforcement proceedings. The court was apparently aware that there might be fraud or collusion at the time of enforcement.

This court in In Re Frey, 15 F.2d 871 (8th Cir.) many years prior to the enactment of the present Minnesota statutes, recognized that Minnesota adhered to the general rule that an agreement that the mortgagor may retain possession and sell or dispose of the property as his own, without satisfaction of the mortgage debt, is fraudulent as a matter of law and voidable as against creditors. Since the mortgage in that case was recorded, the court apparently did not feel that Minnesota invalidated the lien only on the theory of ostensible ownership. Section 514.89 of the Minnesota Code contains an anti-Benedict clause and renders the reservation of dominion over the property innocuous provided that the several parts of the Act are substantially complied with as Section 514.91 prescribes. It might be contended that the reasons for requiring substantial compliance with the factoring statute are the same reasons that are behind the general rule that an exercise of dominion over the property by the mortgagor renders any lien voidable as against creditors. Of course, that is not necessarily so. See 28 Minnesota Law Review, 260, "The Retention of Dominion in Security Financing."

Collier Section 70.77, supra, pps. 1595–1596, In Re Cut Rate Furniture Co., D. C., 163 F.Supp. 360, In Re Summit Hardware, Inc., supra, and In Re Adams Machinery Inc., 20 Wis.2d 607, 123 N.W.2d 558, 564, tend to show that the purpose of the factor's lien statute in some States is only to prevent creditors from relying on ostensible ownership of the debtor while other jurisdictions require a designation of the property liened and give greater protection to the creditors.

In this case, the trial court felt that the purpose of the Minnesota Act was to prevent reliance by creditors on ostensible ownership. The court said: "The fact, therefore, that the filed agreement did not describe the merchandise liened or its location with greater particularity did not place upon interested third parties a burden of independent inquiry which they would not otherwise have." The court, however, also stated that the purpose of the statute was to prevent fraud upon creditors, to give certainty to the Notice, and to prevent lenders from later claiming their lien to be more extensive than it actually was.

In finding that the Factor's Lien Agreement substantially complied with the statutes, the trial court stated that "(2) the reference to all merchandise or its equivalent can be derived from the written agreement and the statute and (3) it was the Bank's money which presumably created the accounts receivable and inventory which the unsecured credi-

tors now wish to divide." The Referee also stated that presumably it was the Bank's money which created the inventory and accounts receivable. The Referee, however, felt that it was too much to assume from the agreement that the factor's lien agreement covered all the merchandise of the borrower.

This court has stated many times that on questions of State law it will not reverse if the trial court has reached a permissive conclusion as to the law. This is true where the question of law is doubtful and the statutes in question have not been interpreted by the Supreme Court of that State. Hope Flooring & Lumber Company v. Boulden, 227 F.2d 303 (8th Cir.); Cass Bank & Trust Company v. National Indemnity Company, 326 F.2d 308 (8th Cir.).

The trial court concluded that if the agreement gave notice, that did not increase the duty of inquiry beyond that contemplated by the statute, and that if there was certainty to the notice so as to prevent fraud and to keep the lender from claiming their lien to be more extensive than it actually was, then there was substantial compliance with the factor's lien statute. The court believes that this is a permissible conclusion to be drawn from the State statutes involved.

The next question is whether the facts justified the court in finding that there was sufficient notice and that it contained the required degree of certainty. There is no problem in holding that there is substantial evidence that there was sufficient inquiry notice. There is more trouble in holding that there was substantial evidence of the required certainty in the notice. Findings cannot be based on speculation and conjecture. Arena Company v. Minneapolis Gas Company, 234 F.2d 451 (8th Cir. Minn.). The trial court in part based his findings in this regard upon the unusual nature of the business of the debtor and that he had only one location where the notice was filed. We cannot say that the court's finding in this regard was clearly erroneous. However, it is possible that on different facts, the filing

of a notice without a general description of the property covered might not be sufficient to give the required degree of certainty to the notice.

The trial court relied somewhat on In Re Summit Hardware, Inc., 192 F.Supp. 489 (E.D.Ohio). That opinion was disapproved on appeal. The notice filed in that case contained more of a description of the property than in this case, but the Ohio statute required considerably more certainty in the notice than the Minnesota statute does. The statutes are different in that the Minnesota statute contains a specific clause stating that a substantial compliance with the several provisions shall be sufficient for the validity of a lien. The Ohio statute contained no such provision, and the court in In Re Summit Hardware, Inc., supra, stated:

"It seems clear to us that whether the Ohio Factor's Lien Law is given a strict or liberal construction, the statutory steps to obtain the lien must be substantially followed in order to obtain a lien. In the present case they were not."

The decision of the Appellate Court in that case is distinguishable from this case either on the above basis or on the difference in the facts of the two cases. We find nothing in In Re Summit Hardware, Inc., that should be given controlling effect in interpreting the Minnesota statute.

A factor's lien may cover both the debtor's inventory and the accounts receivable arising from the disposition of the inventory. Section 514.81 of the Minnesota Factor's Lien Act states that:

"If so provided by any written agreement with the borrower, a factor shall have a continuing lien upon all merchandise of the borrower generally described in such agreement, or any separate written statements thereafter signed by the borrower and delivered to the factor * * * and upon any accounts receivable or other proceeds resulting from the sale or other disposition of such merchandise * * *."

Section 514.88 states:

"* * * unless the factor and the borrower shall agree otherwise, the delivery * * * of a written agreement * * * designating the merchandise which will be subject to the lien, shall operate as an assignment of the accounts receivable which will result from the sale or other disposition of such merchandise * * *."

The Factor's Lien Agreement stated:

"The Factor's continuing lien upon said merchandise shall extend to any and all goods received in exchange therefor and to any and all moneys, accounts receivable or other proceeds resulting from the sale or other disposition of such merchandise, or of any goods received in exchange therefor, whether or not such exchange or disposition is herein authorized, and upon all goods wholly or partially processed of which any such merchandise, or any goods received in exchange therefor, shall have become a component part."

■ The trustee contended that there was no valid lien on the accounts receivable because there was no property generally described in the agreement and that the lists of accounts receivable were not especially prepared for the Bank. The accounts receivable in question were not completely set out in the record before this court, but samples were. They are simply lists of debtors of the bankrupt showing the amount of the debt and date it became receivable, and in order to avoid any possible confusion if there are further proceedings in this case, the accounts receivable here mentioned are those shown in the record by Exhibit 4 through 11. The District Court held that if the lien on the property subject to the lien was valid without the general description, then the lien on the accounts receivable arising from the sale of such property was also valid. This court holds that to be a permissible conclusion of law derived by construing the factoring statute and this court cannot hold the District Court clearly wrong in finding that these accounts receivable were given to the Bank pursuant to the Factor's Lien Agreement.

The District Court remanded the case to the Bankruptcy Court for further proceedings in compliance with his opinion. The Referee stated in his opinion that:

"There was no accounting before me to identify any money in the hands of the trustee as resulting from the collection of any of the accounts said to be covered by the Lien Agreement. And, the trustee objects to the validity of the Reclamation Petition because of that. But the record of the proceedings before me makes it abundantly clear that I was, by consent of the parties, to save the time of the Court and the parties, trying only the preliminary question of the validity of the Factor's Lien and Assignment, and leaving to a later date the accounting, if that became necessary, in the event no stipulation could be reached to settle the identity of the accounts and it should be determined that the Factor's Lien was valid."

This court now holds that the Factor's Lien Agreement is valid and the accounting will now be necessary.

■ In this case, the District Court reversed the Referee. There is much authority to the effect that ordinarily, when a Referee in Bankruptcy has made findings of fact and the Referee has actually heard the evidence, great weight is attached to his conclusions, and they will not be disturbed unless clearly erroneous. This matter was fully discussed in O'Rieley v. Endicott-Johnson Corp., 297 F.2d 1 (8th Cir.). See also Gross v. Fidelity & Deposit Company of Maryland, 302 F.2d 338 (8th Cir. 1962); Employers Mutual Casualty Company v. Hinshaw, 309 F.2d 806 (8th Cir.). In the present case, however, the Referee's error was one of law in that he gave the wrong legal significance to the facts. This court in Employers Mutual Casualty Company v. Hinshaw, supra, recently explained its position in that type of situation.

The District Court in the present case did not make separate findings of fact and conclusions of law. Rule 52 provides that the memorandum of decision will be sufficient if the findings of fact and conclusions of law appear therein. The court's findings did sufficiently appear in the memorandum of opinion. Also, it should be noted that while sometimes the District Court hears evidence in addition to that taken by the Referee, the District Court did not do that in this case.

The decision of the District Court is affirmed.