POWER TRANSMISSION EQUIPMENT CORPORATION, Appellant, v. BELOIT CORPORATION, Respondent.

*No. 135. Argued September 5, 1972.—Decided October 3, 1972.*
(Also reported in 201 N. W. 2d 13.)

For the appellant there was a brief by *Borgelt, Powell, Peterson & Frauen,* attorneys, and *Phillip E. Crump* of counsel, all of Milwaukee, and oral argument by *Mr. Crump.*

For the respondent there was a brief by *Nowlan, Mouat, Lovejoy & Wood* of Janesville, and oral argument by *William S. Wood.*

HALLOWS, C. J. The first question is whether Beloit has a lien on the forgings in its possession for the freight charges it paid. The trial court held Beloit had such a lien under sec. 289.44, Stats.,[1] and we think

[1] "289.44 **Liens of consignees.** Every consignee of property shall have a lien thereon for any money advanced or negotiable security given by him to or for the use of the person in whose name the

the trial court was correct. Power Transmission contends this section does not apply: (1) Because the forgings were mistakenly delivered, and (2) they were not delivered on consignment for sale. We accept the findings of the trial court that the forgings involved were those delivered in July of 1969, and not those mistakenly delivered in September, 1969. True, the forgings were delivered for the purpose of having them machined and not on consignment for sale. But sec. 289.44 is not limited to consignments for sale. Long ago in *Weeks v. Robert A. Johnson Co.* (1902), 116 Wis. 105, 92 N. W. 794, this court stated that a consignee under sec. 289.44 need not hold the property for sale in order to possess a lien. In *Weeks,* the consignee had agreed to purchase a machine if it operated satisfactorily; the machine did not so perform and caused damage to material and the consignee was authorized to replace a part of the machine. The court held the consignee had a lien under the section for the cost of the replacement part but not for the material damaged. In the case of *In re Adams Machinery, Inc.* (1963), 20 Wis. 2d 607, 123 N. W. 2d 558, in determining whether a particular consignment agreement was subject to filing requirements of sec. 241.26, Stats. 1963, the court noted that while most consignments are for the purpose of sale, a consignment relationship could be created which contained no authority to sell and that the word "consigned" used in a commercial sense meant the property was committed or entrusted to the consignee for sale or for care. Since there is no definition in the statute of the word "consignee," we must give it its common and ap-

---

shipment of such property is made, and for any money or negotiable security received by such person for his use unless he shall, before advancing any such money, or giving such security, or before it is so received for his use, have notice that such person is not the actual owner thereof."

proved usage. Sec. 990.01 (1). In a mercantile use, which is applicable here, "consignee" means one to whom a consignment may be made, a person to whom goods are shipped for sale, or one to whom a carrier may lawfully make delivery in accordance with its contract of carriage, or one to whom goods are consigned, shipped, or otherwise transmitted. Black's, *Law Dictionary* (4th ed.), p. 380. The mercantile use of "consignee" is not restricted to one who receives property for the purpose of sale. *Sturm v. Boker* (1893), 150 U. S. 312, 326, 14 Sup. Ct. 99, 37 L. Ed. 1093. This view of the meaning of the statute makes it unnecessary to consider whether Beloit has also a lien at common law as found by the trial court or under sec. 289.41 (1) which it claimed in the trial court.

Common-law and statutory liens continue in existence until they are satisfied or terminated by some manner recognized by law. A lien may be lost by failing to assert it, by waiver, or by payment or tender of the proper amount of the debt secured by the lien. Power Transmission claims Beloit waived its lien by making an excessive demand. The record shows Beloit refused to give up possession of the forgings unless the freight charges plus interest were paid and also payment made of the sum of approximately $23,000 on a disputed claim which had no reference to the forgings.

While there is dicta in *Folsom v. Barrett* (1902), 180 Mass. 439, 62 N. E. 723, cited by Power Transmission to the effect a lien may be lost by a demand of the lienholder for an amount in excess of that due, that case does not state the general rule or the rule in this state. 51 Am. Jur. 2d, *Liens*, p. 185, sec. 50; *Weeks v. Robert A. Johnson Co., supra.* We adhere to the rule in Wisconsin that an excessive demand does not waive the lien. The excessive demand, whether of the amount due for which the lien is claimed or because it is founded upon

an obligation unrelated to the lien, must be made in good faith and in belief that the person making the demand is entitled to such sum and that he has a general lien upon the specific goods. There is no evidence in this case that Beloit was not in good faith and did not believe it was entitled to the sum demanded when it made its demand. Nor is there any evidence Beloit did not believe it had a right to withhold possession of the forgings until payment was made on the account for which it had no specific lien thereon. There must be some evidence the person claiming payment knows or realizes he does not have a general lien on the specific property upon which he has a specific lien before he can be charged with bad faith.

Power Transmission, however, claims Beloit had bad faith because it filed a counter bond in the replevin suit to retain possession of the forgings which it did not own or claim title to. While it may be difficult to understand the purpose of Beloit's filing a counter bond in order to retain the forgings, which it did not own, nevertheless, sec. 265.06, Stats., allows a defendant to file a bond in a replevin suit and the effect thereof is to give the plaintiff, if successful, a right to recover the value of the property.[2] We do not consider the filing of a bond in a replevin suit as evidence of bad faith or, if so, a basis for denying the defense that a lien existed.

Power Transmission contends Beloit had no intention to claim a lien because when it was billed for the machining the invoice did not include the paid freight charges. One having a lien on personal property does not waive

[2] In *Barclay Brass & Aluminum Foundry v. Resnick* (1967), 35 Wis. 2d 620, 151 N. W. 2d 648, this court recognized the statutory right of redelivery but held as a consequence of the defendant's filing a redelivery bond under secs. 270.59 and 265.06, Stats., a plaintiff had the option of either taking a money judgment for the value of the property or recovering possession.

the lien until the demand for the property on which he has a lien is made and he fails to assert it. The critical time is the demand for the property and the refusal. Nor is the lien lost merely because the right to retain possession is not expressly claimed on the ground of the lien. 51 Am. Jur. 2d, *Liens,* p. 184, sec. 48. One may have a lien on property and not know it. The existence of the lien does not depend upon knowledge.

We are unconvinced by the argument of Power Transmission that it made a tender or in the alternative the tender in the amount of the lien was waived in a conversation between representatives of the parties because Beloit took the position the forgings would not be surrendered unless its complete account was paid. It is true that if the amount of the lien had been tendered and the property demanded that Beloit would have been obliged to surrender the property and the lien would have been discharged by the tender. But the trial court found that in the conversation between the representatives of the parties no such tender was made and the excessive demand did not obviate the necessity of making a specific demand for the property and tender by Power Transmission. We have reviewed the evidence and do not consider the finding of the trial court to be contrary to the great weight and clear preponderance of the evidence and thus its finding must be accepted by this court.

An excessive demand, valid under *Weeks,* to constitute a nonwaiver of a lien, cannot without knowledge of the invalidity of the demand constitute a waiver of a tender of the specific amount of the lien; otherwise, the efficacy of the *Weeks'* holding is destroyed. There must be some evidence beyond the excessive demand which will support an inference that a tender of the amount of the lien would be unavailing. Such a situation we think would require some affirmative act of the owner of the prop-

erty which would bring home to the lien-claimant that the scope of his lien embraces only the amount the owner is tendering. The waiver of an actual tender cannot be inferred from a mere excessive demand made in good faith and in ignorance of the scope of the lien.

Although the issue was not raised in the trial court, Beloit now contends the Wisconsin replevin statute is unconstitutional and hence replevin is not available to Power Transmission. After this case was tried in the trial court, the United States Supreme Court decided *Fuentes v. Shevin* (1972), 407 U. S. 67, 92 Sup. Ct. 1983, 32 L. Ed. 2d 556, wherein it struck down the Pennsylvania and Florida replevin statutes because they failed to provide for notice and hearing prior to seizure. The Wisconsin replevin statutes, secs. 265.01–265.13, like those of Pennsylvania and Florida, do not provide for such notice and hearing. Beloit was not injured by this replevin action and has no standing now to raise the constitutional issue. *See: United Public Workers v. Mitchell* (1947), 330 U. S. 75, 67 Sup. Ct. 556, 91 L. Ed. 754; *Yazoo & Mississippi R. R. Co. v. Jackson Vinegar Co.* (1912), 226 U. S. 217, 33 Sup. Ct. 40, 57 L. Ed. 193; *State ex rel. Bergh v. Sparling* (1906), 129 Wis. 164, 107 N. W. 1040; *State ex rel. Wisconsin Real Estate Examining Board v. Gerhardt* (1968), 39 Wis. 2d 701, 159 N. W. 2d 622. We, therefore, do not pass on this issue and this in spite of the fact a three-judge federal court sitting in the Eastern District of Wisconsin has ruled the replevin statute unconstitutional. *See Dorsey v. Community Stores Corp.* (1972), 346 Fed. Supp. 103. Beloit still has possession of the property and has executed a redelivery bond rather than challenge the statute at the time repossession was threatened. We think it has waived its right to now attack the statute

on a constitutional basis. *Pierce Oil Corp. v. Phoenix Refining Co.* (1922), 259 U. S. 125, 42 Sup. Ct. 440, 66 L. Ed. 855; *St. Louis Co. v. Prendergast Co.* (1923), 260 U. S. 469, 43 Sup. Ct. 178, 67 L. Ed. 351.

*By the Court.*—Judgment affirmed.