CAVERS ELEVATOR COMPANY, Appellee, v. DROGE ELEVATOR COMPANY, Appellant.

CUSTOMS AND USAGES: Contracts—Evidence—Contradiction of
1  Contract. Contracts may not be contradicted by evidence of a custom.

CUSTOMS AND USAGES: Contracts—Evidence—Instructions—
2  Grain Sold but Not Delivered within Time Agreed. Where a written contract for purchase of grain was made, subject to Omaha weights and inspection, and provided that, "if contract is not filled at maturity, buyer reserves the right to cancel or to extend or to fill here (Omaha) or elsewhere at our option, any loss resulting therefrom to be payable by seller," and where both parties were regular dealers on said market, it was admissible, for the purpose of construing said provision, to show that the general custom obtaining in the Omaha market, and the rules of the Omaha Grain Exchange, provided that, "where grain is bought to arrive Omaha terms," and is not shipped or delivered

within time of contract, it shall be considered open for both parties until filled or canceled by written notice. *Held* that, under the said rules and provisions of the contract, the purchaser continued to be bound to receive the undelivered grain at the contract price, until terminated by the stipulated notice.

*Appeal from Pottawattamie District Court.*—E. B. Woodruff, Judge.

April 12, 1919.

Action for damages for breach of contract, in that the defendant failed to make delivery to the plaintiff of wheat sold by a written contract. Under the contract, the time of delivery of the grain was to be on or before July 31st. Three months later, the plaintiff bought on the market the amount of the shortage, and charged the same to the account of the defendant, the measure of damages thus claimed by the plaintiff being the difference between the contract price and the market price at the time of such purchase. The defendant admitted the contract, but averred that it was liable only for the difference between the contract price and the market price on July 31st. The question of measure of damages is the real controversy between the parties. The trial court found for the plaintiff, and the defendant appeals.—*Affirmed.*

*Kimball, Peterson & Smith,* for appellant.

*Tinley, Mitchell, Pryor & Ross,* and *Sutton, McKenzie, Cox & Harris,* for appellee.

Evans, J.—The contract in suit, so far as is material for our consideration, was as follows:

"Confirmation of Grain Purchased.

"Omaha, Neb., 7-21, 1916.

"Droge Elevator Co.,
"Council Bluffs, Iowa.

"We confirm purchase from you today per phone sub-

ject to Oma. weights and Oma. inspection as follows:

Cars  Bushels      Grain      Price F. O. B. Time of Ship.
                                   Co. Bluffs
    3,000     No. 2 Hd. Wheat    $1.10      Ten day
"Bill to shipper's order, Council Bluffs, Iowa.

"Notify Cavers Elevator Company. Draw on us at Omaha with bill of lading attached.  *  *  *

"Any surplus or shortage on contract will be settled on basis of market price on the day of unloading.

"If this contract is not filled at maturity we reserve the right to cancel, or to extend, or to fill here or elsewhere at our option, any loss resulting therefrom, to be payable by you.  *  *  *

                            "Yours truly,
                            "Cavers Elevator Company,
                                   "By Bender
"Accepted, Droge Elevator Co."

The market price of wheat in the Omaha market on July 31st was $1.17. The market price on November 4th, being the date upon which the contract was formally canceled, and upon which the plaintiff purchased, was $1.78½. The defendant delivered on the contract, on or before July 31st, the amount of 1,458 bushels. Some time later, it delivered 526 bushels additional. This left a shortage in delivery of 1,016 bushels. On the question of measure of damages, the general line of argument for the defendant is that the contract was breached on July 31st; that thereby the rights of the parties became fixed on that day; and that the measure of damages was the difference between the contract price and the Omaha market price on such date.

It is undoubtedly true, as a general rule, that the measure of damages in such a case is fixed as of the date of the breach. The breach having occurred, the purchaser would be at liberty to enter the market and to supply the deficiency at the market price for that day. But in the case before us,

the parties have seen fit to contract with reference to the contingency of a failure to make delivery within the specified time. The contract provides:

"If this contract is not filled at maturity, we reserve the right to cancel, or to extend, or to fill here or elsewhere at our option, any loss resulting therefrom, to be payable by you."

This clause presents a question of construction. The defendant contends that the plaintiff thereby assumed the burden of a formal election within a reasonable time as to whether it would "cancel," or "extend," or "fill." As an aid to construing this provision of the contract, evidence was introduced of the general custom obtaining in the Omaha market, both of the parties hereto being regular dealers in grain upon such market. In this connection, the rules of the Omaha Grain Exchange were put in evidence. Such rules include the following:

"Section 1. Where grain is bought to arrive, Omaha terms, and the same is not shipped or delivered within the time specified in the contract of purchase, the contract shall be considered open for the benefit of both parties thereto until filled or until canceled either:

"(a) By notice in writing from the seller to the buyer that further delivery will not be made thereunder; or

"(b) By written notice from the buyer to the seller that the contract will be canceled on a date named in such notice unless shipment or delivery be made and notice thereof received by the buyer on or before such date.

"Upon breach of any such contract of sale and cancellation in the manner herein specified, the injured party shall be paid by the party breaching the contract the difference between the contract price and the current market price on the date of the receipt of notice of such cancellation."

The defendant insists strongly that it is not permissible to introduce evidence of custom to contradict a contract.

Without doubt, this is a correct legal proposition. But no evidence of custom contradictory to the contract was received in this case. Such evidence was received only for the purpose of construing terms of the contract which might otherwise be deemed ambiguous. We think that the rules of the Exchange herein set forth were receivable as an aid to a proper construction of the quoted clause of the contract. We see no necessary inconsistency between such rules and the contract in its entirety. On the other hand, we think that the contract, properly construed, is in harmony with such rules. Moreover, the defendant itself put this construction upon the contract, and delivered 526 bushels of grain some days after the expiration of the time limit. The rules of the Exchange, above quoted, are entirely fair to both purchaser and seller. The general effect of them is to extend the contract after the time limit, and to keep it binding upon both parties until one notifies the other of his purpose to terminate the same. Under these rules, and under the clause of the contract above quoted, the plaintiff, as purchaser, continued bound to the defendant, as seller, to receive the undelivered grain at the contract price until the fourth day of November. If the market price had gone below the contract price, this rule would have operated in favor of the seller. In view of the rising market, its operation was in favor of the purchaser. But the market was known to both parties, every day of the period of the extension.

We reach the conclusion, therefore, that, by the terms of the contract, it continued in force after the expiration of the time limit until one party or the other terminated it by appropriate notice. This was the holding of the trial court. Some other questions are argued by appellant, but they do

1. CUSTOMS AND USAGES: contracts: evidence: contradiction of contract.

2. CUSTOMS AND USAGES: contracts: evidence: instructions: grain sold but not delivered within time agreed.

not affect the question which we deem decisive. Complaint is made of the act of the trial court in failing to rule on objections, the case being tried to the court without a jury. The defendant was undoubtedly entitled to appropriate rulings in that regard, but a careful examination of the record discloses no objection upon which an erroneous ruling could have worked prejudice to the defendant. The decisive issue between the parties, as above indicated, was so extremely narrow as almost to preclude the possibility of mere error in the trial, as distinguished from an erroneous final judgment. The judgment below is, therefore,—*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.