Mrs. VERONICA WALL, Appellant, v. MUTUAL LIFE INSURANCE COMPANY of New York, Appellee.

No. 42217.

MARCH 6, 1934.

E. D. Perry, Frank F. Messer, and T. M. Fairchild, for appellant.

Dutcher, Walker & Ries, for appellee.

ALBERT, J.—Plaintiff's petition was the ordinary action on an insurance policy for the death, by accidental means, of her husband. The answer of the defendant, aside from a general denial, pleaded in substance that, under the provisions of the policy and the law, the policy was not in force at the time of the death of the said Joseph Wall. By way of reply plaintiff pleaded first, that the company had no right to forfeit or suspend said policy, because the notice provided for in section 8959 of the Code was not given in the manner prescribed by said section and at no time did the defendant ever give said notice to the assured as was prescribed by said law; second, that under the terms of the policy and under certain conditions the policy was to participate in the surplus of the company, and in the second division of the reply it was pleaded that it was the custom of the company to give written notice in advance of the due date of the amount of the premium and the amount of the dividend apportioned to such policy, and also stating the gross premium less the dividend apportioned to such policy and payable on the same date. The amount of the dividend was unknown to the plaintiff and the defendant never informed the insured or the plaintiff of the amount of such dividend payable at the end of the first policy year. Plaintiff also denied that the defendant company ever gave any written or other notice to the insured of the amount of the dividend apportioned to such policy. Later, in the same division, it is alleged that the insured never received notice "of the amount of the dividend apportioned to said policy and by the defendant payable to the insured at the end of the first policy year." Later it is averred that the failure to give written notice to the insured of the date of said premium "and of the amount of the annual dividend thereon which insured could

have used in reduction of the gross premium when due" was the cause of the insured's not paying the premium.

On motion the court struck all the above allegations from the second count of plaintiff's reply, and plaintiff stood on this ruling and appealed.

 The first question raised is whether or not, under section 8959 of the Code (1924), co-ordinated with section 8673, the notice therein provided is necessary in this case to a forfeiture or suspension of the policy. This policy was dated June 14, 1924. It is the ordinary life policy for $5,000, and in addition provides for double indemnity if the insured die from external, violent, and accidental means, within sixty days after the date of such bodily injury. The premium on the policy was $141.07, and the first premium was paid on the issuance of the policy, and the policy provided for "a like amount to be paid on each 14th day of June hereafter until the death of the insured." As to the payment of premiums, the policy provided:

"All premiums are payable in advance, at said Home Office * * * on or before date due. * * * A grace of thirty-one days shall be granted for the payment of every premium after the first during which period of grace the insurance shall continue in force. * * * If any premium be not paid before the end of the period of grace, then this Policy shall immediately cease and become void, and all premiums previously paid shall be forfeited to the Company except as hereinafter provided."

The due date of the second premium was the 14th of June, 1925. Under the terms of the policy, adding the days of grace given, the last day on which the premium could be paid, under the terms of the contract, would be the 15th day of July, 1925. The insured met his death on the 14th day of August, 1925. Passing the statutory provisions hereinafter referred to, under the terms of the contract, this policy had lapsed and was forfeited at the time of the death of the insured, but the plaintiff insists that under section 8959 of the Code (1924), notwithstanding the provisions of the policy, the same could not be forfeited unless the provisions of said section, together with those of section 8673 of the Code, were complied with. Without these provisions of the Code there is no question but that the insurance company had the right to make provisions for forfeit-

ure and voiding of policies similar to the ones contained in this policy.

In dividing our Code into chapters, life insurance companies are provided for in one chapter (chapter 398), and all insurance companies other than life are treated of in a separate chapter (chapter 404). In 1880, the Eighteenth General Assembly of this state, by chapter 210, passed an act entitled: "An Act to Secure Policyholders in Fire Insurance Companies From Unjust Forfeitures of Policies." This was the basis of what is now section 8959 of the Code, but applies only to fire insurance companies. On the adoption of the Code of 1897, section 1727 enlarged the scope of the aforesaid enactment and provided that:

"No policy or contract of insurance provided for in this chapter (404) shall be forfeited or suspended for nonpayment of any premium, assessment or installment provided for in the policy, * * * unless within thirty days prior to, or on or after the maturity thereof, the company shall serve notice in writing upon the insured that such premium, assessment, or installment is due or to become due, stating the amount, and the amount necessary to pay the customary short rates, up to the time fixed in the notice when the insurance will be suspended, forfeited, or canceled, which shall not be less than thirty days after service of such notice. * * * "

The section provides that the notice may be served personally or by registered mail. This provision, of course, by reason of its setting in the Code, had no application whatever to life insurance policies. In 1919, the Thirty-eighth General Assembly (chapter 348, section 8) attempted to carry over and make partially effective the aforesaid section 8959 to life insurance companies. That enactment (8673) reads as follows:

"Every life insurance company issuing a separate policy, or maintaining a separate department, for the purpose of writing any of the classes of insurance authorized by the preceding section shall also be subject to all of the provisions applicable to companies authorized to write a similar kind of insurance under the provisions of chapter 404."

The preceding section (8672) authorizes:

"Any life insurance company organized on the stock or mutual

plan and authorized by its charter or articles of incorporation so to do, may in addition to such life insurance, insure, either individually or on the group plan, the health of persons and against personal injuries, disablement or death, resulting from traveling or general accidents by land or water, * * * "

It is apparent that the defendant company had availed itself of the benefits of section 8672, and, in addition to its usual life policy, added this double indemnity clause in case of accidental death.

It will be noticed by a careful study of section 8673 above set out that the full force and effect of the aforesaid section 8959 is not carried over to life insurance companies by reason of the aforesaid section 8673. It is carried over to the extent, however, of providing that the notice required by section 8959 is necessary to be served in two instances: First, where the life insurance company undertakes to cover liability for accidents and issues a separate policy therefor; and, second, when the said company maintains a separate department for the purpose of writing accident insurance. Aside from these two conditions, section 8959 is not effective as against life insurance companies writing this kind of a policy. And aside from these two particular instances, the notice to the insured provided for by section 8959 is not required of life insurance companies when issuing such a policy. The allegations in plaintiff's reply in relation to this matter do not bring them within the provisions of section 8673, and therefore the matters thus alleged with reference to the two aforesaid sections of the Code were immaterial and insufficient to raise an issue on this proposition, and were therefore properly stricken.

As to certain other allegations stricken by the court, it is insisted that they are material because the company had no right for the forfeiture or lapsing of the policy because notice was not given by the company to the assured of the amount of dividends due on the policy, to the end that he might, if he saw fit, apply the dividends as a part payment on his premium and thus know how much cash he must send the company in addition thereto. Very able briefs are presented on this question, and numerous cases are cited, but, as we view the proposition, none of them is applicable here because of the wording of the policy issued. One of the provisions of the policy is:

"This policy shall participate in the surplus of the Company and the proportion of the surplus accruing hereon *shall be ascertained and distributed upon payment of the second year's premium* and thereafter at the end of the second and of each subsequent policy-year."

The insured by the same provisions is given the option to use each of said dividends as follows: 1. To be paid in cash; 2. to be used in payment on any premium; 3. to be applied to the purchase of paid-up participating additions to the policy; 4. left to accumulate to the credit of the policy, with 3 per cent compound interest.

There is no claim that the insured ever elected any one of said options. The policy itself is not uncertain or ambiguous. The right to participate in the surplus (dividends) arises in this case only upon the payment of the second year's premium. The company is not bound to ascertain and distribute said dividend until the insured makes payment of his second year's premium. Such are the exact terms of the agreement, and until that time and circumstance arrive there is no duty on the company to ascertain said dividend, and it necessarily follows as a matter of course that if there be no duty to ascertain this until that time, there could, of course, be no duty upon the company to notify the policyholder of the amount thereof, even if the law contended for with reference to the notice applied. It follows, therefore, that the court's action in striking the allegations with reference to failure to give notice of the dividend, under the pleading as it stood, was proper.

It is further pleaded that it was the custom of the company to notify policyholders with relation to the due date of the premium and also as to the amount of the dividends.

Without attempting to discuss the difference between custom and use or to discuss this subject generally, there are certain fundamentals which are controlling here. It is a well-settled principle that where the terms of a contract are clearly expressed and unambiguous, they cannot be varied or contradicted by evidence of custom and usage. McDowell v. Bowles, Billings & Kessler Grain Co., 177 Iowa 744, 157 N. W. 173; Bowell v. Draper, 149 Iowa 725, 129 N. W. 54; Dillow & Co. v. City of Monticello, 145 Iowa 424, 124 N. W. 186; 17 C. J. p. 508, section 77.

It is another well-settled principle that where a claim is made of particular custom and usage the same must be known by

the parties affected by it or it will not be binding. Or, to say it another way, where one seeks to advantage himself of a particular custom or usage, the same must have been known to him at the time he acted and he must have acted and relied thereon. Rindskoff Bros. v. Barrett, 14 Iowa 101; Bradford v. Homestead Fire Ins. Co., 54 Iowa 598, 7 N. W. 48; Sherwood v. Home Savings Bank, 131 Iowa 528, 109 N. W. 9; 17 C. J. p. 458, section 18.

Further than this, under the pleadings herein the decedent had no dealings with the company from the time he bought and paid for the policy in the first instance until the time of his death. Under this situation, there being no other transactions whatever between the company and the insured, the doctrine of custom and usage could under no circumstances apply.

We think the ruling of the district court in sustaining the motion to strike these various matters was correct.—Affirmed.

CLAUSSEN, C. J., and EVANS, KINDIG, and DONEGAN, JJ., concur.