PARAMOUNT PICTURES, INC., Appellee, v. G. H. MAXON, Appellant.

No. 44427.

FEBRUARY 14, 1939.

A. J. Myers, for appellant.

Parrish, Guthrie, Colflesh & O'Brien, for appellee.

SAGER, J.—On February 4, 1935, plaintiff and defendant entered into negotiations which resulted in a written contract, as plaintiff claims; or one in parol, as defendant asserts. Printed parts of the contract deserve the characterization given to a like contract by the court of appeals of Louisiana, in Universal Film Exchanges v. Lavine, 159 So. 130, 131:

"The alleged contract is very lengthy and printed in the smallest type. It is most difficult to unravel just what it means, so much so that neither counsel for plaintiff nor defendant have offered much help as to its meaning."

It does appear, however, that the parties were dealing in moving picture films to be used by defendant in his theater. Whatever construction is to be placed on the contract which resulted, defendant signed four printed and typewritten instruments. None of them, but for a few exceptions not important here, mentions by name any film or picture. The exhibit, under the word "Schedule," recites:

"Group S-7," and continues:

"There are licensed for exhibition hereunder all of the Distributor's * * * sound photoplays * * * which shall be generally released by the Distributor * * * during the year commencing August 1, 1935, * * * ."

The only description of films is: "4 Class A Photoplays; 6 Class B Photoplays; 42 Class C Photoplays."

Exhibit 19, into which are incorporated by reference the provisions of Exhibit 18, is designated: "Paramount Short Feature Exhibit Contract." This mentions no film by name. Exhibits 20 and 21 are like the others except that they are for the year beginning August 1, 1934.

These, plaintiff says, constituted four several and complete contracts.

Under circumstances hereafter narrated, defendant, after having shown some pictures, notified plaintiff in writing that he canceled the balance of the contract because of failure to deliver a certain "feature", "Gilded Lily", for use on March 17-18, 1935. Thereafter plaintiff brought suit under the provision of the contract which provided that in event of default the defaulting party "shall pay the damage so caused, and if such damage cannot be definitely computed, shall pay as liquidated damages the sum equal to the fixed sum herein specified as the rental of each such motion picture * * * ."

Defendant places his defense, aside from the denial which will have no attention here, on the ground that the contract, a parol one as he claims it to be, has been breached so as to excuse performance by him.

Plaintiff established that defendant had not taken all the films which had been the subject of bargaining between them. Their number and price, and the liquidated damage clause quoted above, together with proof by defendant's own letter of cancellation, dated May 20, 1935, justified the action of the trial court if the transaction was as plaintiff claimed it to be. Defendant moved for a directed verdict at the close of plaintiff's case, on grounds: (1) Failure of plaintiff to prove performance on its part; and (2) failure to prove an attempt to mitigate damages after defendant refused to go on with the contract.

This motion was overruled generally, and, we think rightly

so. As the issues were proved plaintiff had made its case, and was entitled to judgment unless and until defendant advanced sufficient reasons why this should not be so. This defendant asserts, and with such success, he claims, as to at least make it a jury question whether the contract was severable, in writing, or whether in parol, nonseverable and indivisible; that the consideration which actuated him and without which he would not have dealt at all, failed when plaintiff failed to furnish the film above described for use on March 17-18, 1935.

If a jury believed the defendant these facts could have been found: Defendant operated a moving picture theater at Jewell in this state. He was fully "booked" to July 1, 1935, except for March 17-18. The necessity of filling these dates brought him to plaintiff's Des Moines agency. There he sought to get the film "Gilded Lily", because the "stars" in that production gave it an especially valuable appeal. He was told that he could not have it for the mentioned dates unless he likewise contracted for other productions plaintiff had or would have for distribution. Being unable to rent the desired film except on the condition imposed, he, in reliance upon the express representation that the film would be provided for the dates mentioned, signed the written instruments mentioned above, and proceeded in various ways to publicize this film. Before "Gilded Lily" was to be exhibited defendant went to plaintiff's Des Moines agency to get it. There he was told by plaintiff's agent that the film was not available, that it had been sent to another town at a considerably higher rental; that he (plaintiff's agent) was sorry but that it was too late for him to do anything about it. Later defendant went to see plaintiff's agent Copeland. The outcome of the talk or agreement was that defendant was to get three films free in addition to those he had contracted for, by way of settlement. Copeland told defendant that this arrangement would have to be approved by the "head office"; that this might take a little time, but that defendant go ahead and play the pictures and it would "be all right". Following this defendant continued showing the pictures. Films were sometimes by mutual arrangement substituted for others. On May 8 and 9 defendant exhibited "Gilded Lily". This, with the exhibition of other of the films, forms the basis of plaintiff's reply setting up waiver and estoppel. On May 20, 1935, plaintiff having been told the proposed settlement

with reference to the three extra films had been rejected, defendant gave the notice of cancellation and thereafter took or exhibited no more pictures.

It is needless to say that plaintiff puts a different construction on the record, and at many points offered evidence tending to prove that some of the things defendant testified to did not happen at all, or did not warrant the view defendant gives them. Moreover it argues that all this oral testimony was incompetent as varying the terms of a written contract. Whether the objection was good, we need not determine.

█ Plaintiff does not deny that it actually booked the film for the dates defendant says he contracted for, nor could it well do so because in two exhibits bearing the signature of the booker it was actually so booked. But it is argued that custom and usage permitted change of films after they had been rented for certain dates. Even so, this could not prevail against an express contract (if one existed) to the contrary.

But, plaintiff further contends, exhibiting others by defendant operated as waiver and estoppel.

This brings us to the difficult question before us. Assuming that the jury found the facts to be as defendant claims, was he warranted in canceling the contract, or was he bound to continue with it and sue for damages?

There is much confusion and difference of opinion on the subject among the courts, as to the defendant's remedy where there has been part performance and a breach. The books are full of cases dealing with contracts having to do with sales of personal property and construction contracts which have been partially performed. We do not attempt the unnecessary and impossible task of reconciling the decisions of the various jurisdictions. The question will be found treated at length, with citation of authorities, in 12 Am. Jur., Title—Contracts, sections 389 and 390. As bearing upon the principle involved, is the note to Stearns Company v. Dennis Lumber Company, 2 A. L.R. 638, at page 643. See, also 13 C. J., Title—Contracts, section 664. No case just like this has been before us, the nearest approach to it being Niederhauser v. Jackson Dairy Co., 213 Iowa 285, 237 N. W. 222.

█ In general, where contracts have been found to be severable or divisible, and the consideration justly apportioned to the part of the contract, it is held that the breach does not de-

stroy the contract in toto, but that defendant must recoup himself in damages.

A divisible contract has been thus defined in 3 Williston on Contracts, Rev. Ed., section 860A:

"A contract under which the whole performance is divided into two sets of partial performances, each part of each set being the agreed exchange for a corresponding part of the set of performances to be rendered by the other promisor, is called a divisible contract."

The same author (section 824) has this to say:

"It is a commonplace of the decisions that whether promises are dependent upon one another is determined by the intent of the parties."

The legal principles involved in determining whether defendant may treat the whole contract as broken or must take damages is thus stated by Sanborn J., in Kauffman v. Raeder, 8 Cir., 108 F. 171, 179, 47 C. C. A. 278, 54 L. R. A. 247:

"There is another principle of law which equally prohibits the maintenance of the theory of the defendants in this case. It is stated by Lord Mansfield in Boone v. Eyre, 1 H. Bl. 273 [note 1], in these words: 'Where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other; but where they only go to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent.' [Citing cases.]

"The breach of a covenant of the first class—a dependent covenant, one which goes to the whole consideration of the contract—gives to the injured party the right to treat the entire contract as broken, and to recover damages for a total breach. [Citing cases.] But a breach of a covenant of the second class, an independent covenant, a covenant which does not go to the whole consideration of the contract and is subordinate and incidental to its main purpose, does not constitute a breach of the entire contract, does not authorize the injured party to rescind the agreement, but he is still bound to perform his part of it, and his only remedy is a recovery of damages for the breach." [Citing cases.]

It is sufficient to say, after a careful consideration of the record and of the decisions applicable, that the majority of the court are of the opinion that defendant's remedy was by way of recoupment damages and not a complete defense as was asserted here. An examination of the authorities cited by the parties, and many others which have been examined, does not point to a definite result.

It follows that, there being no error, the judgment of the trial court is affirmed.—Affirmed.

MITCHELL, C. J., and MILLER, OLIVER, and BLISS, JJ., concur.