DES MOINES BLUE RIBBON DISTRIBUTORS, INC., appellee, v.
DREWRYS LIMITED U. S. A., INC., appellant.

No. 51321.

(Reported in 129 N.W.2d 731)

900

July 16, 1964.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, of Des Moines, and Oare, Thornburg, McGill & Deahl, of South Bend, Indiana, for appellant.

Abramson, Myers & Hockenberg, of Des Moines, for appellee.

GARFIELD, C. J.—This is a law action by Des Moines Blue Ribbon Distributors, Inc., against Drewrys Ltd. U. S. A., Inc., for damages from cancellation by defendant of an agreement, alleged to be partly written and partly oral, under which plaintiff says it was a distributor of defendant's beer. Trial resulted in jury verdict and judgment for plaintiff for $6429.17 from which defendant has appealed.

Plaintiff's petition alleges that about February 18, 1955, plaintiff's assignor, Des Moines Blue Ribbon Distributor, a co-partnership, and defendant entered into the agreement whereby in consideration of establishing and maintaining a wholesale distributorship for the sale of defendant's beer, it granted Blue Ribbon exclusive right to sell its products in all of Polk County (including Des Moines), two adjoining counties and parts of two others and agreed said arrangement was to continue so long as there would be a demand for the product and Blue Ribbon desired to continue with the sale of the same. The written portion of the contract was attached to, and made part of, the petition.

The petition further alleges future profits from said business were contemplated by the parties at the time the agreement was made and induced Blue Ribbon to enter into it; pursuant to the agreement Blue Ribbon spent great sums and efforts to establish and maintain a distributorship in the designated territory and continued to act as such distributor until July 1, 1960, when it assigned to plaintiff-corporation all rights under the

agreement; plaintiff continued to perform the agreement until June 14, 1961, when, without reasonable notice or cause, defendant forthwith terminated the distributorship and engaged a new distributor in violation of its agreement with Blue Ribbon; because of defendant's breach of the agreement plaintiff has been damaged $9950.

Defendant's answer was a denial of the petition.

I.   The written portion of the agreement in question is a typewritten letter (exhibit A), dated February 18, 1955, from defendant, signed by its president, to Bennett Gordon, Des Moines Blue Ribbon Distributors. It consists of two sheets of stationery, the first of which is defendant's printed letterhead, bearing defendant's name and address at the top and the words "Brewers of World's finest ale and beer" in red print. At the bottom of this sheet, also in red, and in small type, is the printed statement, "Every shipment of beer or ale is an individual transaction. No contracts, agencies or franchises awarded." The second sheet of the exhibit is entirely plain except for the typewriting and the president's signature with pen and ink.

Bennett Gordon was the principal active partner of Blue Ribbon, plaintiff's assignor, and is the managing officer of plaintiff-corporation. All defendant's dealings were with him.

Basis of the first group of assigned errors is the printed statement at the bottom of the letterhead. Defendant argues it is unmistakably part of the written portion of the agreement declared upon; defendant was therefore entitled to a directed verdict; the court should have instructed the jury to disregard any evidence of oral statements in conflict with the printed statement, and receipt of evidence of the alleged oral portion of the agreement with Blue Ribbon violated the parol-evidence rule.

Exhibit A is too long to set out in full. It first confirms stated prices quoted Blue Ribbon by Mr. O'Brien, then defendant's general sales manager, who with Edwards, defendant's Iowa-Illinois sales manager, arranged with Bennett Gordon for Blue Ribbon to become defendant's distributor. The exhibit clearly refers to Blue Ribbon as defendant's distributor in the designated territory, stresses the importance of Blue Ribbon's

use of advertising material supplied by defendant, states it is sending "the outlets in your territory * * * an announcement of your appointment as the DREWRYS distributor * * * Also—we have an attractive drivers' uniform offer * * * explained in the enclosed brochure. * * * We are confident you will do an outstanding job with DREWRYS—both for yourself and for us."

The typewritten portion of the exhibit makes no reference to the printed statement at the bottom of the letterhead. There is no evidence Bennett Gordon's attention was called to it. O'Brien and Edwards were two of the three witnesses for defendant. The former frankly testified, "I had authority to establish this distributorship with Des Moines Blue Ribbon and did so." Edwards said, "On February 18, 1955, Des Moines Blue Ribbon Distributors did take on the distributorship of Drewrys beer."

We are not persuaded any of the first group of errors should be sustained. The printed statement at the bottom of the letterhead was not unmistakably part of the written portion of the agreement, did not entitle defendant to a directed verdict, nor was the parol-evidence rule violated by receipt of evidence of the alleged oral part of the agreement. The court's instructions left to the jury the question whether the printed statement was part of the agreement. Although the instructions might well have been more explicit on this point we do not find they were erroneous on the ground objected to and argued by defendant.

We are not aware of an Iowa decision on the question whether a printed statement on a letterhead, not referred to in the written portion of the letter or brought to the other party's attention, is part of the contract embodied therein. The result reached in a particular case depends largely upon the facts.

1 Williston on Contracts, Third Ed. (1957), section 90D, cites precedents in which such a printed statement is held to be part, or not part, of the agreement and then states: "The principal question in deciding cases of this kind is whether the facts present a case where the person receiving the paper should as a reasonable man understand that it contained terms of the

contract which he must read at his peril, and regard as part of the proposed agreement. The precise facts of each case are important in reaching a conclusion."

We think these decisions support the conclusion reached here: Sturm v. Boker, 150 U. S. 312, 326, 327, 14 S. Ct. 99, 103, 37 L. Ed. 1093, 1099; Maynard v. James, 109 Conn. 365, 146 A. 614, 65 A. L. R. 427, 429, 430; Summers v. Hibbard, Spencer, Bartlett & Co., 153 Ill. 102, 38 N.E. 899, 901, 46 Am. St. Rep. 872; B. F. Sturtevant Co. v. Fireproof Film Co., 216 N. Y. 199, 110 N.E. 440, 442, L. R. A. 1916D 1069; Clem Lbr. Co. v. Marty, Tex. Civ. App., 26 S.W.2d 319, 320; R. J. Menz Lbr. Co. v. E. J. McNeeley & Co., 58 Wash. 223, 108 P. 621, 28 L. R. A., N. S., 1007, 1011; Weeks v. Robert A. Johnston Co., 116 Wis. 105, 92 N.W. 794, 796. See also 17A C. J. S., Contracts, section 310, page 171; 12 Am. Jur., Contracts, section 245.

The Clem Lumber Company case, supra, holds that where the party who prepared the writing did not intend printed words at the top of the pages to be part of the writing they will not be so considered.

█ There can be no question defendant made Blue Ribbon its distributor in the designated territory. As stated, the typewritten portion of exhibit A clearly so indicates and the principal witnesses for defendant testified to such an arrangement. The parties so treated it in letters and otherwise for several years. If the printed statement at the bottom of the letterhead were regarded as part of the written portion of the distributorship agreement and given controlling effect it would mean no such contract was entered into—all that occurred was a transaction for a single shipment of beer. It is extremely unreasonable that the parties intended their distributorship agreement to be nullified by printed words at the bottom of the letterhead.

█ In any event we feel that if the printed statement were regarded as part of the agreement it is inconsistent with the typewritten portion and the latter would therefore control the former. Section 622.21, Code 1962.

II. Defendant's second group of assigned errors are based on the contention the agreement alleged by plaintiff so lacks mutuality of obligation it is unenforceable. The argument is

that Blue Ribbon and plaintiff as its assignee were not obligated to act as distributor for defendant for any definite time, could terminate the arrangement at will and therefore defendant might do likewise without incurring liability to plaintiff.

We think the validity of the claimed agreement depends on whether there was consideration for it. We have held "If the lack of mutuality amounts to a lack of consideration, then the contract is invalid. But mere lack of mutuality, in and of itself, does not render a contract invalid. If mutual promises be the mutual consideration of a contract, then each promise must be enforceable, in order to render the other enforceable. Though consideration is essential to the validity of a contract, it is not essential that such consideration consist of a mutual promise." Standard Oil Co. v. Veland, 207 Iowa 1340, 1343, 224 N.W. 467, 469; Lewis v. Minnesota Mutual Life Ins. Co., 240 Iowa 1249, 1265, 37 N.W.2d 316, 325. See annotation, 83 A. L. R. 1416, 1421. See also Hardin v. The Eska Co., 256 Iowa 371, 373, 374, 127 N.W.2d 595, 596, 597; J. C. Millett Co. v. Park & Tilford Distillers Corp., D. C. Cal., 123 F. Supp. 484, 493.

Numerous authorities are to the effect that where a contract granting a sole distributorship for an indefinite time is supported by some consideration other than the services to be rendered thereunder as an agent, the contract will continue for a reasonable time and may be terminated without cause only upon reasonable notice. There is substantial evidence plaintiff and its assignor furnished such additional consideration. It could properly be found plaintiff's assignor agreed to, and did in fact, purchase and pay for defendant's products, take title to them, assume the risk of their destruction, maintain warehouse facilities, keep an adequate stock of defendant's products on hand, advertise and otherwise promote their sale and tie up substantial amount of capital in inventory and accounts receivable.

Some of these matters are related to the agency aspects of the agreement but go beyond them. A distributorship contract is more than a mere contract of agency. It is also a sales contract but it is also more than a mere sales contract. It

partakes of the substantial aspects of both. Hunt Foods v. Phillips, 9 Cir., Cal., 248 F.2d 23, 28; J. C. Millett Co. v. Park & Tilford Distillers Corp., supra, D. C. Cal., 123 F. Supp. 484, 492.

That the matters above referred to furnished consideration moving from plaintiff's assignor and plaintiff to defendant, in addition to the rendition of services, see the two precedents just cited; also Jack's Cookie Co. v. Brooks, 4 Cir., S. C., 227 F.2d 935, 938; California Wine Assn. v. Wisconsin Liquor Co., 20 Wis.2d 110, 121 N.W.2d 308, 314–316; 4 Williston on Contracts, Revised Ed., section 1027A, page 2852; 1A Corbin on Contracts (1963), section 155, page 26. See also Hardin v. The Eska Co., supra, 256 Iowa 371, 373, 374, 127 N.W.2d 595, 596, 597.

We need not pass upon plaintiff's argument that the distributorship agreement may be held supported by sufficient additional consideration, and hence valid, by application of the doctrine of promissory estoppel. See Hardin v. Eska Co., supra; Whorral v. Drewrys Ltd. U. S. A., Inc., D. C. Iowa, 214 F. Supp. 269; Miller v. Lawler, 245 Iowa 1144, 1153, 66 N.W.2d 267, 273, 48 A. L. R.2d 1058; 47 Iowa Law Review 725 et seq.; 13 Drake Law Review 4, 5.

It appears that during the six years, four months when plaintiff and its assignor acted as distributor for defendant, case lot sales of its products in the assigned territory increased from 11,502 in the remaining 10 months, 10 days in 1955 to 106,893 in 1960, and 48,446 in the 5 months, 14 days of 1961 prior to cancellation of the contract by defendant. Further reference to the evidence at this point is deemed unnecessary. Suffice it to say the jury could properly find, as it evidently did, plaintiff and its assignor performed their part of the distributorship agreement and defendant's termination thereof was without cause.

We cannot sustain any of the second group of assigned errors.

III. We consider now claimed errors in not directing a verdict for defendant on the ground the alleged agreement was terminable at will by either party without liability for damages,

plaintiff suffered no compensable damages and in any event failed to sustain its burden of proof as to damages. In the same division of its brief defendant argues instruction 13 to the jury on the measure of plaintiff's damages was erroneous.

The argument regarding defendant's right to a directed verdict on these grounds is substantially the same as the one we have attempted to answer in the preceding division and we think is sufficiently disposed of by what is there said. As we have indicated, since there was no time limitation in the contract, it is regarded as terminable by either party on reasonable notice. Hess v. Iowa Light, Heat & Power Co., 207 Iowa 820, 826, 221 N.W. 194, and citations; California Wine Assn. v. Wisconsin Liquor Co., supra, 20 Wis.2d 110, 121 N.W.2d 308, 316–318, and citations; 17A C. J. S., Contracts (1963), section 398, page 481; 12 Am. Jur., Contracts, section 305. See also Hardin v. The Eska Co., supra, 256 Iowa 371, 373, 127 N.W.2d 595, 596.

As stated in the recent Wisconsin case, supra, the distributor is entitled to recover the prospective margin on sales it would have made during the period ending in a reasonable time after receipt of notice of termination of the contract. To like effect is General Tire & Rubber Co. v. Distributors, Inc., 253 N. C. 459, 117 S.E.2d 479, 489. See also Atlas Brewing Co. v. Huffman, 217 Iowa 1217, 1222–1226, 252 N.W. 133, and citations. Hardin v. The Eska Co., supra, 256 Iowa 371, 373, 127 N.W.2d 595, 596, 597, states the cases generally hold a contract for an indefinite time may be canceled only on reasonable notice.

Evidence and the instruction on the question of damages will be considered in the next division hereof.

IV. Plaintiff's petition alleges defendant forthwith terminated the distributorship agreement without reasonable notice and cause on June 14, 1961, and by virtue thereof plaintiff was damaged in the sum of $9950. The damages are not itemized. Both instructions 4 and 13 require proof, among other matters, that defendant breached the claimed agreement substantially as alleged by plaintiff.

Instruction 13 states the measure of damages for revocation

of such a contract without just cause is the profit the distributor is deprived of by such action. Attention is then called to evidence of sales by plaintiff and plaintiff's successor of defendant's products, net profit per case on sales by plaintiff, and to the fact plaintiff limited its claim for loss of future profits to the period (of 12½ months) down to June 30, 1962. The jury is told to consider the above evidence and what it would cost plaintiff to have sold the products and determine how much, if any, plaintiff was damaged; in determining such amount it should consider and decide what period of time is a reasonable period of time for plaintiff to recover such damages, it should consider the condition and demands of the trade for defendant's product, the number of towns in the territory, and all other facts and circumstances shown in evidence.

There is a noticeable error of omission from instruction 13 as it appears on page 225 of the record. Pursuant to rule 341, Rules of Civil Procedure, at our request the clerk of the trial court has certified and transmitted to us the original instruction. The part omitted is the direction regarding the reasonable period of time above referred to.

Much of defendant's long objection in the trial court to instruction 13 raises the points disposed of in our Division I, based on the printed statement at the bottom of defendant's letterhead. It also asserts the jury is not limited to the evidence, although No. 13 and other instructions plainly contain such a limitation. Also that the instruction is contrary to Iowa law and the evidence of damages is insufficient.

Most of defendant's argument on this point is devoted to the contention no damages could be awarded because of claimed insufficiency of the evidence. The argument cannot be accepted. The evidence closely resembles that held sufficient in Atlas Brewing Co. v. Huffman, supra, 217 Iowa 1217, 1222–1226, 252 N.W. 133, and earlier cases there cited.

It is true no witness testified directly to what would be a reasonable time following receipt of the letter terminating the distributorship. Such testimony would be a matter of opinion only, which the jury would not ordinarily be compelled to

accept. We think plaintiff's right to damages accruing during such period did not necessarily require it to offer expert evidence on the point referred to.

We find no reversible error in instruction 13 on a ground objected to in the trial court and argued here.

V. When Blue Ribbon was awarded the distributorship in February 1955 it was a partnership composed of Bennett Gordon, his brother Robert and their parents. In January 1958 Robert left Des Moines and Bennett and the parents formed a new partnership which continued the business of the four-member one until about July 1, 1960. These three partners then formed a corporation of which they were the only stockholders and officers. The mother died before the trial, leaving Bennett and his father sole stockholders and officers of plaintiff. The second partnership and the corporation bought all assets and assumed all liabilities of its predecessor.

Bennett was manager and moving spirit of both partnerships and the corporation, and defendant had substantially all its dealings with him. A good many letters between the parties were received in evidence and are before us. Those from defendant, usually signed by its president (including the original letter of February 18, 1955), were addressed to Bennett Gordon and those to defendant were signed by him.

Defendant asserts it was entitled to a directed verdict because, it is said, there is no evidence it knew of and consented to the claimed assignments of the distributorship. The contention lacks merit.

The general rule as to assignability of contracts is thus ·stated in 6 Am. Jur.2d, Assignments, section 11, pages 196, 197: "The principle that all ordinary business contracts are assignable is subject to the exception that executory contracts for personal services or those involving a relationship of confidence are not assignable by either party unless the contract so provides, or unless the other party consents thereto or ratifies the assignment or waives his right to object. This principle applies to preclude an assignment by either the party who is to perform, or the party who is to receive, the services. The general rule also applies where the assignment is from one

corporation to another, * * *." In re Estate of Grooms, 204 Iowa 746, 750, 216 N.W. 78, is among the cases expressing much the same thought. Many supporting precedents are there cited.

It is doubtful at best whether this distributorship was for personal services—certainly it involved more than personal services—or a relationship of confidence between defendant and either partnership or the corporation. What confidence existed was between defendant and Bennett Gordon and there is nothing to indicate this was affected or that defendant was prejudiced by withdrawal of Robert from the partnership or formation of the corporation and transfer to it of the partnership business. There is no basis for a finding the distributor's duties were less efficiently performed because of the change in the partnership or the formation of the corporation.

In any event we think there is substantial evidence, even though circumstantial, defendant consented to the assignment from the partnership to the corporation, ratified it and waived its right to object thereto. From the time the corporation was formed plaintiff paid defendant for its products by frequent checks signed "Des Moines Blue Ribbon Distributors, Inc. by Bennett Gordon." On the first two checks "Inc" was added in pen to what preceded it which was in print. On the third and later checks "Inc" was also printed but the check form was further changed by adding below the line on which Bennett signed, "Pres. V Pres. Treas." For 11½ months defendant endorsed and cashed all the checks until it terminated the distributorship.

Regarding the retirement of Robert from the partnership and the formation of the new partnership Bennett Gordon wrote defendant's president on January 20, 1958, his brother was leaving. So far as shown, defendant did not object.

The present case is somewhat like Albany Land Co. v. Rickel, 162 Ind. 222, 231, 70 N.E. 158, 161, where an agency contract with a two-member partnership was assigned to one partner individually. In rejecting such a defense as made here the opinion states: "If the assignment was unauthorized, and the company afterwards knowingly accepted the fruits and

benefits of Rickel's individual acts, such an acceptance was a ratification which clothed the transactions with all the validity and obligation that would have been imparted by a previous authority to do them." (Citations) See also Kinser v. McMurray, 190 Iowa 1329, 1337–1339, 181 N.W. 691, and citations.

VI. Defendant objected to instruction 8 which states an agreement between defendant and the partnership would not constitute an agreement between defendant and plaintiff-corporation without a valid assignment thereof, with notice to *or* consent of defendant; the burden to prove such notice *or* consent was upon plaintiff; *if plaintiff failed to prove such notice was given or that defendant consented thereto plaintiff could not recover;* if it did prove such notice *or* consent the jury should proceed to consider other issues.

The objection to the instruction is that "or", where the single word is italicized by us, should be "and"—that both notice to defendant of the assignment and its consent thereto were necessary. It may be conceded "or" should have been "and" in the first two and last clauses of the instruction. However, we are not persuaded instruction 8 is for this reason sufficiently prejudicial to call for a reversal under the circumstances here.

The third clause of the instruction, italicized by us, is not vulnerable to defendant's objection. Under it failure to prove either notice or consent would be fatal to plaintiff's case. Further, there is little if any difference between notice and consent as applied to this record. Notice of assignment of the distributorship, without objection thereto by defendant during 11½ months of dealing with the assignee, would amount to consent. There is clear evidence defendant was repeatedly put on notice of the assignment. There is no suggestion it objected thereto. We find no other error among those assigned and argued by defendant which would strengthen its claim to a reversal based upon this somewhat technical error in instruction 8.

This instruction bears some analogy to one on which we declined to reverse in Ness v. H. M. Iltis Lbr. Co., 256 Iowa 588, 128 N.W.2d 237, 238–240. There an instruction used "and" in two places and "or" once. We held use of "or" was not

prejudicial to appellant but use of "and" was not to be commended. The opinion calls attention to the rule that in statutes "and" is sometimes construed as a disjunctive and "or" as "and." The Ness opinion observed "It would seem instructions should not be viewed more critically than statutes" (page 593 of 256 Iowa, 240 of 128 N.W.2d).

VII. Defendant complains of certain rulings on evidence. As indicated, we find no reversible error in them.

Mr. O'Brien, defendant's sales manager in 1955, was asked whether it had a policy of awarding franchises, agencies or contracts. On plaintiff's objection the court excluded his negative answer to which the witness added, "It stipulates that on the bottom of their correspondence." The printed statement on the bottom of defendant's letterhead, referred to in Division I hereof, appears on many exhibits and in other evidence.

Further, evidence of defendant's custom or policy was not admissible to contradict an express agreement to the contrary. Farmers & Merchants Bank v. Wood Bros. & Co., 143 Iowa 635, 644, 118 N.W. 282; Cavers Elev. Co. v. Droge Elev. Co., 185 Iowa 1075, 1078, 1079, 171 N.W. 696; Wall v. Mutual Life Ins. Co., 217 Iowa 1106, 1111, 1112, 253 N.W. 46, and citations; Paramount Pictures v. Maxon, 226 Iowa 308, 312, 284 N.W. 119. Also, where custom or usage is relied upon it must be known to the parties affected by it or it will not be binding. Wall case, supra, and citations.

When asked whether there was a discussion with Bennett Gordon as to how long a distributorship would last, Mr. O'Brien answered, "I could never tell any distributor how long a distributorship would last." After the answer was given defendant objected to it. The objection was sustained but no motion was made to strike the answer. It therefore remained in the record. Correll v. Goodfellow, 255 Iowa 1237, 1247, 125 N.W.2d 745, 751, and citations. Further, Mr. O'Brien testified fully to his version of what he told Gordon and added: "That's about the only thing I could say to any distributor. To the best of my recollection, that is what I told Mr. Gordon." Thus substantially the same answer as that objected to appears a second time.

Some other rulings on testimony of Mr. O'Brien are complained of. The complaints are disposed of by what is said above and the added observation the witness was properly not allowed to express his opinion or conclusion.

We find no undue restriction of defendant's cross-examination of Bennett Gordon. On his direct examination it appeared incidentally that Blue Ribbon was a distributor of Pabst beer since 1953 and during the time it handled defendant's products. Defendant was not permitted to show on cross-examination whether Blue Ribbon had a written contract with Pabst. On cross-examination Gordon testified, "We terminated our relationship with Pabst about September 1, 1961" (2½ months after defendant terminated the distributorship in controversy). The court sustained plaintiff's objection to the next question, "Who terminated that relationship, you or Pabst?" It is perhaps a sufficient answer to the complaint as to this last ruling that the question had just been answered.

In any event, no error appears. The questions called for a collateral matter which, if pursued, might well have diverted the jury's attention from the real issues and needlessly prolonged the trial. Although cross-examination is of course a valuable right, the trial court has considerable discretion in determining its scope and extent. Russell v. Chicago, R. I. & P. R. Co., 251 Iowa 839, 850, 102 N.W.2d 881, 888, and citations; Crist v. Iowa State Highway Comm., 255 Iowa 615, 630, 123 N.W.2d 424, 433. Abuse of discretion does not appear.

VIII. After filing its answer defendant moved for judgment on the pleadings based on the printed statement at the bottom of its letterhead, the contentions any oral testimony contrary thereto would violate the parol-evidence rule, and the distributorship agreement so lacked mutuality it could be terminated at will without liability for damages. Another judge overruled the motion. In overruling defendant's motion for directed verdict at the close of plaintiff's evidence based on similar grounds and others, the court thus referred to this earlier ruling, "Whether the order of Judge Jackson is binding on this court, at least it is of the opinion this motion should be overruled."

Defendant's final claim of error is in following the earlier

ruling which, we are told, was wrong and was not binding on the judge who presided at the trial. We have tried to point out the grounds relied upon did not entitle defendant to a directed verdict. Nor did they entitle it to judgment on the pleadings. It may be conceded, without so deciding, the earlier ruling was not binding on the trial court. He did not so regard it and independently reached the conclusion the case was for the jury. —Affirmed.

All JUSTICES concur except HAYS, J., not sitting.