**BLALOCK MACHINERY AND EQUIPMENT COMPANY, INC., Plaintiff,**

v.

**IOWA MANUFACTURING COMPANY OF CEDAR RAPIDS, IOWA, Defendant.**

**Civ. A. No. C82–892A.**

United States District Court, N.D. Georgia, Atlanta Division.

July 5, 1983.

Richard DeMayo, Atlanta, Ga., for plaintiff.

Daryll Love, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION AND ORDER

HORACE T. WARD, District Judge.

Plaintiff instituted this diversity action in the Superior Court of Clayton County, Georgia, seeking recovery for the alleged wrongful termination of a distributorship contract between the plaintiff and defendant. The defendant then removed the action to federal court. This matter is cur-

rently before the court on the defendant's motion for summary judgment.

Based on the briefs of both counsel and the documents submitted in support of or in opposition to the defendant's motion for summary judgment, the court makes the following:

## FINDINGS OF FACT

1.

The parties entered into a distributorship contract on January 2, 1960 which was a confirmation of an earlier agreement between the parties. The defendant is a manufacturer of heavy equipment, and the plaintiff was one of its dealers for over twenty-seven (27) years. Under the contract the plaintiff received a "protected area"—the entire state of Georgia. It further appears to the court that during the life of the contract, plaintiff sold no products of competitors of the defendant, hired personnel to sell and handle defendant's products, and maintained a stock of defendant's products and replacement parts.

2.

Paragraph XVIII of the distributorship contract states in pertinent part that the agreement is deemed to be executed and entered into in the State of Iowa and that it shall be construed, enforced and performed in accordance with the laws of the State of Iowa.

3.

Paragraph XV(1) of the distributorship contract states that the agreement shall continue until terminated as provided in the agreement.

4.

Paragraph XV(2) of the distributorship contract states that "either party may terminate this contract at any time by notice in writing of an election to do so, transmitted by United States registered mail or by telegram addressed to the other party at the address herein indicated. Any such cancellation shall become effective thirty (30) days from the date of transmittal of such notice, subject to the rights and obligations of the parties then existing."

5.

On August 10, 1981, written notice of termination of the distributorship contract by Iowa Manufacturing was forwarded to Blalock Machinery and Equipment Company, Inc. (hereinafter "Blalock") by United States registered mail.

6.

The termination of the distributorship contract became effective thirty (30) days from the date of the written notice.

## CONCLUSIONS OF LAW

■ At the outset the court notes that Iowa law must govern the substantive issues of this action.[1] Defendant contends that the express terms of the contract providing that "either party may terminate the contract at any time by notice in writing of an election to do so" entitles it to a summary judgment as a matter of law since there exist no genuine issues of material fact. Defendant has submitted the contract and· the written termination notice in support of its motion.

The plaintiff strongly opposes the motion for summary judgment and bases its allegation of wrongful termination on the following grounds: lack of good faith (bad faith), unconscionability, course of dealing and course of performance, and tort.

A. *Lack of Good Faith*

The plaintiff contends that the defendant's motion for summary judgment should be denied because genuine issues of material fact exist as to whether or not the termination of the contract was made in good faith. The plaintiff argues that the appli-

---

**1.** In resolving the claim presented in this diversity action, the court must follow the Georgia conflict of laws rule. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Georgia's conflicts rule states that the law of the state where the contract is made and performed will govern the validity and interpretation, except where the result is contrary to Georgia's public policy. *Delta Air Lines, Inc. v. McDonnell Douglas Corp.,* 503 F.2d 239 (5th Cir.1974).

cable law in Iowa concerning good faith is that "every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement," *Iowa Code Ann.* § 554.1203, and that this obligation of the Uniform Commercial Code (hereinafter "UCC" or "Code") "may not be disclaimed by agreement." UCC § 1–102.

The defendant argues that the cases of Iowa have uniformly held that a distributorship contract of indefinite duration may be terminated without cause upon the giving of reasonable notice, citing *Des Moines Blue Ribbon Distributors v. Drewrys Ltd.,* 256 Iowa 899, 129 N.W.2d 731 (1964) and *Corenswet, Inc. v. Amana Refrigeration, Inc.,* 594 F.2d 129 (5th Cir.), *cert. denied,* 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979) (Iowa law). Defendant further contends that where the right to terminate a contract is absolute under the express terms of the agreement, the motive of the party terminating the agreement is irrelevant to the question of whether the termination is effective, citing *Augusta Medical Complex, Inc. v. Blue Cross of Kansas, Inc.,* 227 Kan. 469, 608 P.2d 890 (1980).

In support of its motion, the defendant primarily relies on the *Corenswet* case, which applied Iowa law. In *Corenswet,* an exclusive wholesale distributor of certain home products manufactured by the defendant brought suit to prevent the defendant from terminating the distributorship contract. The termination clause allowed termination by either party "at any time for any reason" on 10 days notice. The district court ruled that the defendant had no right to terminate the contract unilaterally, a contract which was of indefinite duration and could be terminated only for some reason. The district court further held that the arbitrary termination of a distributorship agreement contravenes the Code's general obligation of good faith dealing. On appeal, the Fifth Circuit reversed these district court rulings and upheld the contract termination.

The plaintiff asserts that *Corenswet* is not controlling, and attempts to distinguish

that case from the instant case on the grounds that the termination clause in *Corenswet* contained the provision "that at any time for any reason," the contract could be terminated. The contract in the case *sub judice* contains no such express provision allowing either party to cancel "for any reason or with or without cause." The termination clause in the instant case states solely that either party may terminate the contract at any time. Therefore, the plaintiff contends that the obligation of good faith as set out in *Corenswet,* must be imposed in this case. The plaintiff is in effect asking the court to conclude that the plaintiff was terminated for other than objective business reasons and that such termination without cause was made in bad faith. The court declines to make such a finding or conclusion.

The court recognizes that the good faith obligation of the UCC has been adopted by Iowa, *see Iowa Code Ann.* § 554.1203, and is applicable to distributorship contracts, however, the parties have not cited and the court has not found any cases applying Iowa law that hold that the good faith obligation overrides the express terms of the contract. In the absence of any authority, the court, in agreement with the Fifth Circuit in *Corenswet,* is not persuaded that the section 1–203 good faith obligation can be used to override or strike express contract terms. *Corenswet, supra,* at 138. In other words, the court declines to conclude that the UCC prohibits arbitrary termination of distributorship contracts. The express terms of the contract state that either party may terminate the contract at any time. There is no specific language in the termination clause which states that such termination may only be made with cause. Absent such language, it is logically inferred and may be concluded that either party may terminate the contract at any time without cause, and the court believes the parties to have "understood" the termination clause to mean such.[2] Therefore, given the ex-

---

**2.** *See Cardinal Stone Company, Inc. v. Rival*     *Manufacturing Co.,* 669 F.2d 395 (6th Cir.1982).

press terms of the contract, the motives of the defendant in terminating the plaintiff are irrelevant. *See Augusta Medical Complex v. Blue Cross, supra.*

The court believes the statement in *Corenswet* regarding the termination of contracts without cause and the lack of good faith to be applicable to the instant case:

> The question these cases present is whether public policy forbids enforcement of a contract clause permitting unilateral termination without cause. Since a termination without cause will almost always be characterizable as a "bad faith" termination, focus on the terminating party's state of mind will always result in the invalidation of unrestricted termination clauses. We seriously doubt, however, that public policy frowns on any and all contract clauses permitting termination without cause. Such clauses can have the salutary relief of permitting parties to end a soured relationship without consequent litigation.

594 F.2d at 138. Furthermore, given the fact that either party had the power to unilaterally terminate the contract without cause, it cannot be said that the plaintiff could not have done the same as the defendant and terminated the contract for whatever reason or for no reason.

The court in *Corenswet* concluded that "the Code does not *ipso facto* bar unilateral arbitrary terminations of distributorship agreements, and that Iowa's adoption of the Code therefore left undisturbed the law reflected in the decision of *Des Moines Blue Ribbon Distributors v. Drewrys, Ltd.,*[3] *supra.* The court finds the holding of *Corenswet* to be applicable and controlling[4] in the case *sub judice* and concludes that the defendant was entitled to terminate the contract without cause upon 30 days notice, that proper notice was given, and that the good faith obligation of the Code does not override the express terms of the contract. Accordingly, the termination is effective.

### B. *Unconscionability*

The second ground that the plaintiff raises in opposition to the defendant's motion for summary judgment is that the termination clause is unconscionable. Unconscionability is a question of law and may properly be decided on summary judgment. *Stanley A. Klopp, Inc. v. John Deere Co.,* 510 F.Supp. 807, 810 (E.D.Pa. 1981), *affirmed,* mem., 676 F.2d 688 (3rd Cir.1982). In order to prevail on a theory of unconscionability, the plaintiff must demonstrate that 1) it had no "meaningful choice" but to deal with the defendant and accept the contract as offered and 2) the termination clause was unreasonably favorable to the defendant. *Corenswet, supra,* at 139, fn. 12; *RJM Sales and Marketing v. Banfi Products Corp.,* 546 F.Supp. 1368 (D.Minn.1982).

Neither of these elements is present in the case at bar. While a preprinted

---

In that case, there was a termination clause in paragraph 18 of the standardized purchase order which read: "Buyer reserves the right to change or amend the specifications and to terminate this purchase order in whole or in part at any time." This termination clause is similar to the one in the instant case in that both say solely that termination may be made "at any time." In the *Rival* case, while not expressly stated, it is clear that the clause "at any time" was presumed to mean without cause. The plaintiff in that case also raised the argument of the good faith obligation which must be imposed in a contract involving a unilateral termination without cause. The court in the *Rival* case rejected the plaintiff's argument and followed the reasoning of *Corenswet.*

**3.** *Drewrys* is a pre-Code Iowa case whose ruling on this issue follows the common law, which is essentially the rule of section 2–309 as applied to distributorship contracts. Section 2–309 of the Code provides: "Where the contract provides for successive performance but is indefinite in duration it is valid for a reasonable time and unless otherwise agreed may be terminated at any time by either party. *Iowa Code Ann.* § 554.2309(2). The Iowa Supreme Court in *Drewrys,* in applying the common law rule, held that an exclusive distributorship of indefinite duration may be terminated without cause only upon reasonable notice.

**4.** The Fifth Circuit decisions handed down before October 1, 1981, are binding on the Eleventh Circuit. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206 (11th Cir.1981).

standardized contract was used by the defendant in connection with its dealers, thus making the termination clause basically non-negotiable, the plaintiff did not have to enter into the contract. Furthermore, there is no evidence and the plaintiff has not alleged that it was under economic duress when it made the contract, nor does the evidence indicate that the defendant had grossly superior bargaining power. *See RJM Sales v. Banfi Products, supra,* at 1375.

The termination clause is also not unreasonably favorable to the defendant. The clause gives *either* party the power to unilaterally terminate the contract upon 30 days notice. Thus, the clause would have allowed the plaintiff, like the defendant, to terminate the distributorship contract with the defendant if a more favorable offer with one of the defendant's competitors had arisen. *Id.* For the foregoing reasons, the court concludes that the termination clause is not unconscionable.

### C. Course of Dealing and Course of Performance

Plaintiff contends that even if the language in the termination clause of the contract could be interpreted to permit an unrestricted and arbitrary termination, this result is not supported by the parties' course of dealing and course of performance. Plaintiff directs the court's attention to *Iowa Code Ann.* § 554.2202 which provides that the "parties' course of dealing or course of performance may explain or supplement the contract." The plaintiff has cited the *Corenswet* case which stated that the historical treatment of the dealer by the manufacturer was relevant in construing the contract.

The court recognizes that the course of dealing and course of performance may supplement the express terms of the contract. Upon review of the pleadings and the other documents in the record, it appears to the court that the parties had a business relationship for approximately twenty-seven years, and that due to the continuous dealings between the parties and the continuous performance of both parties, both the plaintiff and the defendant may have created a reasonable expectation in the other that neither would terminate the distributorship contract without cause, although the contract expressly gave both of them the right to do so. *See Corenswet, supra,* at 136.

As previously stated, the plaintiff attempted to construe the express terms of the termination clause to mean that either party could terminate the contract only upon a showing of cause. The court has ruled that the express terms in the termination clause of the contract cannot be construed as such, and therefore concludes that these express contract terms must control over any conflicting course of dealing or course of performance. *Id.* Accordingly, there are no genuine issues of material fact with regard to the alleged wrongful termination of the distributorship contract based on the parties' course of dealing and course of performance.

### D. Tort

Plaintiff finally contends that Georgia[5] may recognize a cause of action in tort for the alleged wrongful termination of a contract.[6] It then directs the court to *Ga. Code Ann.* § 105–104 for the proposition that a general cause of action is given to a party if it is damaged under Georgia law.

In order to maintain a cause of action in tort under Georgia law because of a breach of a duty growing out of a contractual relation, the breach must be shown to have been a breach of a public duty imposed by law, and not merely a breach of

---

**5.** Under Georgia's choice of law principles, Georgia law will apply if tort is a proper cause of action.

**6.** Plaintiff appears to argue that this court should follow the ruling of several states which have recognized a cause of action in tort for wrongful termination of a contract, citing *de Treville v. Outboard Marine Corp.,* 439 F.2d 1099 (4th Cir.1971). The court notes that the *de Treville* case was decided prior to the adoption of the Code and that that Court applied South Carolina law. Therefore, that case is not controlling here.

a duty imposed by the contract itself. *Murphy Oil Corp. v. Weir,* 145 Ga.App. 631, 244 S.E.2d 146 (1978); *Long v. Jim Letts Oldsmobile, Inc.,* 135 Ga.App. 293, 217 S.E.2d 602 (1975). In this case, the only alleged breach of duty arose from the contract itself (i.e., from the termination clause), and therefore, no action may be maintained in tort.

### CONCLUSION

For the foregoing reasons, the court concludes that there do not exist genuine issues of material fact regarding the termination of the contract. Accordingly, it is hereby ORDERED that the defendant's motion for summary judgment is GRANTED. This action is DISMISSED,[7] and the clerk is DIRECTED to enter judgment in favor of the defendant.

---

7. By Order of December 15, 1982, the court stated that at the time the court considered the motion for summary judgment, if it found insufficient facts to support the plaintiff's claims, it would consider the plaintiff's request to postpone a decision on the motion in order to allow the plaintiff to continue discovery. Based on the Iowa law and the court's ruling, it is evident that any further facts which plaintiff would present would be fruitless since the issues presented are questions of law addressed to the court. Accordingly, plaintiff's request to postpone a ruling on the defendant's motion for summary judgment and to allow the plaintiff to continue discovery is DENIED.